UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK - MANHATTAN
----------------------------------------------------------------------X
MARK NESSELSON M.D.

                                           Index No:

                Plaintiff,

                                **VERIFEID COMPLAINT FOR
MANDATORY AND
PROHIBITIVE PRELIMINARY
INJUNCTION PURSUANT TO
FED. R. CIV. PROC. 65;
INJUNCTIVE RELIEF
PURSUANT TO 42 USC §1983
AND DECLARATORY
JUDGMENT PURSUANT TO
28 USC §2201 ET.SEQ.**

                    -against-

James McDonald MD in his official
capacity as Commissioner of NYS
Department of Health;Joseph A. Giovannetti
in his official capacity as Director of Bureau of
Investigations NYS Department of Health;
Michelle Morse M.D. in his official capacity
as Commissioner of the New York City Dept.
of Health and Mental Hygiene; New York City
Dept. of Health and  Mental Hygiene,

                         Defendants.
----------------------------------------------------------------------X

       The Plaintiff Mark Nesselson M.D. by his undersigned attorneys as and for his Verified

Complaint against the defendants sets forth as follows:

## IDENTITY OF THE PARTIES

       1.     At all of the relevant times hereinabove and hereinafter mentioned Plaintiff was

and still is a physician licensed to practice medicine in the State of New York. He possesses an

unencumbered and unrestricted license to practice medicine  number 165950 issued on April 18,

1986. His practice is limited to pediatrics. At all of the times hereinabove and hereinafter

mentioned, Plaintiff maintained and still maintains a principal place of business at 146 W 95th St New York, NY 10025.

2.    At all of the relevant times hereinabove and hereinafter mentioned, the Defendant James McDonald MD ("McDonald") was and still is the Commissioner, appointed state official and head executive officer of the New York Department of Health ("DOH").

3.    At all of the times hereinabove and hereinafter mentioned McDonald maintained and still maintains a principal place of business at NYS Department of Health, Corning Tower, 24th Floor, Albany, NY 12237 and in the principal regional office of the DOH located at 90 Church Street 4th Floor, New York NY 10007 in the county and City of New York.

4.    Defendant McDonald is sued herein in his official capacity because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a prohibitive and mandatory temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendant state official and agent as set forth in this Complaint.

5.    At all of the relevant times hereinabove and hereinafter mentioned, the Defendant Joseph Giovannetti ("Giovannetti") was and still is an investigator and the Director of the Bureau of Investigations of the DOH. Mr. Giovannetti is sued herein in his official capacity as an appointed administrative official in the position described above. At all of the times hereinabove and

hereinafter mentioned Defendant Giovannetti maintained and still maintains a principal place of business in the regional office of the DOH located at 90 Church Street, 4th Floor, New York, NY 10007 and a principal place of business c/o NYS Department of Health, Corning Tower, Room 23rd Floor Albany, NY 12237.

6.    Giovannetti is sued herein in his official capacity as an investigator of the DOH because the Plaintiff is seeking relief against the said Defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a prohibitive and mandatory temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (b) prospective permanent injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint aimed at enjoining defendants' prospective violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the defendant state official and agent as set forth in this Complaint.

7.    The defendants McDonald and Giovanetti, shall be collectively referred hereinafter as the "state defendants".

8.    The defendant Michelle Morse MD ("Morse") is and at all of the relevant times hereinabove and hereinafter mentioned was an appointed official of the City of New York and the head officer and Commissioner of the NYC Department of Health and Mental Hygiene ("NYC DHMH"). Her principal business address is at 520 1st Avenue, New York, NY 10016.

9.    At all of the relevant times hereinabove and hereinafter mentioned Morse along with her staff and agency were and are responsible for administering and maintaining the New York Citywide Immunization Registry ("NYCIR") pursuant to Public health Law §2168.

3

10. The defendant Morse is named a party defendant to this action by virtue of the fact that she acted and continues to act in concert with the state defendants named hereinabove to prospectively violate Plaintiff's constitutional rights under the Fifth and Fourteenth Amendment of the US Constitution as set forth in this complaint.

11. The defendant Morse is made a party defendant to this action because the Plaintiff is seeking relief against the said defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a prohibitive and mandatory temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (b) prospective injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the New York City defendant as set forth in this Complaint.

12. The defendant NYC DHMH was and at all of the times hereinabove and hereinafter is an agency of the City of New York. The defendant DHMH does not have Eleventh Amendment immunity against relief sought in the present action  because it is an agency of a municipality and not an agency of the state of New York. Its principal business address is at 520 First Avenue, New York, NY 10016.

13. At all of the relevant times hereinabove and hereinafter mentioned, NYC DHMH, was and still is responsible for administering and maintaining the NYCIR pursuant to Public Health Law §2168. The defendant NYC DHMH is named a party defendant to this action by virtue of the fact that the agency and its staff  conspired and continues to conspire with defendant Morse

and the other state defendants named hereinabove and, in this caption, to jointly and prospectively violate Plaintiff's constitutional rights under the Fourth, Fifth and Fourteenth Amendment of the US Constitution as set forth below in this Complaint.

14.    The defendant NYC DHMH is made a party defendant to this action because the Plaintiff is seeking relief against the said defendant as follows: (a) Pursuant to Fed. R. Civ. Proc 65 a prohibitive and mandatory temporary injunction in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (b) prospective injunctive relief pursuant to 42 USC §1983 in the form and substance set forth in this complaint in the form and substance set forth in this Complaint aimed at enjoining defendants' prospective joint violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments; (c) a declaratory judgment pursuant to 28 USC §2201 et.seq. granting the Plaintiff prospective declaratory relief against the said  defendant as set forth in this Complaint.

15.    The defendants Morse and NYC DHMH shall be collectively referred to hereinafter as "City defendants".

## JURISDCTION

16.    The United States District Court for the Southern District of New York has subject matter federal question jurisdiction over this matter because pursuant to 28 U.S.C. § 1331, because the claims set forth herein arise under the Constitution and statutes of the United States, namely the Fourth Fifth and Fourteenth amendments of the US Constitution and 42 USC §1983.

## VENUE

17.    Pursuant to Fed. R. Civ. Proc 1391(b)(1) venue is properly based in the Southern

District of New York because the defendants maintain a principal place of business at in the county of New York which is within the territorial venue of the Southern District of New York.

18.    Pursuant to Fed. R. Civ. Proc 1391(b)(2)  venue is properly based in the Southern District of New York because a substantial part of the events or omissions giving rise to the claim occurred in the City and County of New York. Both the residence of the defendants McDonald, Giovanetti, and the place where a substantial part of the events giving rise to this action occurred in New York County New York which are within the territorial judicial district of the Southern District of New York.

## **RELIEF SOUGHT**

### **(i)    Mandatory preliminary injunction - Fed. R. Civ. Proc 65 against the state defendants.**

19.    The Plaintiff is seeking a mandatory preliminary injunction pursuant to Fed. R. Civ. P. 65 mandating that the defendants process Plaintiff's application for access to the new York Citywide Immunization Registry (NYCIR EX C hereto) and grant access to the same database to the plaintiff over which they have exclusive possession and control. Such access is necessary to prevent immediate and continuous harm to the Plaintiff through the continued violation of his Fourteenth Amendment rights as set forth below in this pleading.

20.    In support of this part of the relief sought the Plaintiff states that defendants' continuous and prospective denial  of access to NYCIR through defendants' failure and refusal to process Plaintiff's application for the same, while  denying him the due process being afforded to the Plaintiff under PHL 12-a amounts to a de facto medical license restriction in violation of Plaintiff's Fourteenth Amendment due process rights safeguarded by the Fourteenth Amendment and outside of defendants' authority to impose such restrictions, as discussed below.

21.    The grant of immediate access to NYCIR is a matter of statutory compliance with

defendants' mandatory statutory duties which is not subject to defendants' subjective irrational and arbitrary unconstitutional conduct described in this complaint. The continuous and prospective denial of access to the NYCIR under the facts of this case amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in this Verified Complaint. It also amounts to an unauthorized summary disciplinary action in the form of a license restriction against Plaintiff's plenary medical license without due process.

22.    The Plaintiff is seeking a mandatory injunction pursuant to Fed. R. Civ. Proc. 65 directing the defendants, their agent, servants and assigns to remove Plaintiff's name and information posted in defendants' official web site at https://health.ny.gov/prevention/immunization/schools/fraud.htm (EX A hereto - hereinafter "branding site") because the posting violates and prospectively continues to violate Plaintiff's Fourteenth Amendment due process rights and Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint;

23.    The Plaintiff is seeking a mandatory injunction pursuant to Fed. R. Civ. Proc. 65 directing the defendants, their agents, servants and assigns to revoke their directions given to school districts through their posting at https://health.ny.gov/prevention/immunization/schools/fraud.htm which directs that the same school districts reject Plaintiff's vaccination records and to affirmatively mass mail official notices to all school districts in the state advising them that the foregoing instructions have been revoked based upon the grounds stated in this Verified Complaint. Defendants' continuous directives given

on their web site violate Plaintiff's Fourteenth Amendment due process rights and Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in this Verified Complaint.

24.    The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants their agents servants and assigns from blocking Plaintiff's access to NYCIR through action or inaction because under the facts of this case such continued action amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

25.    The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants from continuing to maintain the posting regarding the Plaintiff        on        their        official        web        site        at https://health.ny.gov/prevention/immunization/schools/fraud.htm based upon the fact that such continued posting amounts to a continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

26.    The Plaintiff is seeking a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 prohibiting the defendants from continuing to direct school districts to reject Plaintiff's vaccination records for all of the reasons articulated in the Verified Complaint because such continuous actions taken by the defendants under the facts of this case posting amounts to a

continuous violation of Plaintiff's due process under the Fourteenth Amendment and a further violation of Plaintiff's constitutional right to practice his profession without unreasonable government interference as safeguarded by the Fifth and Fourteenth Amendment of the US constitution as set forth in the Verified Complaint.

27.    The Plaintiff is seeking a permanent injunction pursuant to 42 U.S.C. § 1983 prospectively enjoining the state defendants, their agents' servants, and assigns from violating Plaintiff's Fifth and Fourteenth Amendment rights as set forth below in this Complaint and barring the defendants from continuing to violate Plaintiff's constitutional rights through their unauthorized and unconstitutional actions described below in this pleading.

28.    The Plaintiff is seeking a declaratory judgment pursuant to 28 U,S.C. § 2201 et seq. as follows:

(a)    Declaring Defendants' conduct in barring Plaintiff's access to NYCIR  as unconstitutional, and a violation of Plaintiff's Fourteenth and Fifth Amendment rights for all of the reasons articulated hereinabove;

(b)    Declaring the prospective and continuous postings on defendants' official banding site - EX A hereto - and further directing school districts to reject Plaintiff's signed written vaccine records as acts which are unconstitutional and violative of plaintiff's Fifth and Fourteenth Amendment rights set forth below;

(c)    Declaring the administrative subpoena annexed hereto as EX B as facially unconstitutional and violative of Plaintiff's Fourth Amendment rights;

(d)    Declaring defendants' insistence that the Plaintiff comply with the subpoena as well as their refusal to withdraw the same as a continuous violation of Plaintiff's Fourth Amendment rights.

**BRIEF STATEMENT OF THE CASE.**

29.     This case arises from defendants' multiple continued violations of Plaintiff's constitutional rights safeguarded by the Fourth, Fifth and Fourteenth Amendments of the US Constitution.

30.     In this case the plaintiff is seeking prospective injunctive and declaratory relief enjoining the state officials from continuing to violate Plaintiff's constitutional rights under the color of the New York investigative process of the Health Department.

**(i)     Introduction to the Defendants.**

31.     In what the Plaintiff contends to be an overt display of multiple flagrant violations of Plaintiff's constitutional rights, and in particular due process, the defendant James McDonald MD, who is the Commissioner of the Department of Health, appointed and deputized and empowered investigators of the New York State Department of Health to take direct and affirmative adverse administrative actions against the Plaintiff and to impose de facto restrictions on Plaintiff's medical license without affording him even an iota of the wide array of procedural due process mandates of the Fourteenth Amendment as safeguarded by New York law under PHL §12-a and §230 and State Administrative Procedure Act Secs. 301 through 401.

32.     In the process of continuing to violate Plaintiff's constitutional due process rights and his rights under the Fourteenth and Fifth Amendments  the state defendants vested and continue to vest themselves with formidable powers that the New York legislature never dreamt of anointing them  with.

33.     In the present case the administrative defendants took it upon themselves to act extra judicially as investigators, prosecutors, judge jury and executioner all while restricting

plaintiff's license to practice medicine. They are falsely declaring him on their own public website to engage in criminal conduct of vaccine fraud without any formal presentation of evidence and while dispensing with the formal administrative adjudicative process en toto. The defendants took it upon themselves to issue formal unauthorized directives to school officials to reject vaccination paper documentation from the plaintiff based upon the affirmative and knowingly statement made upon defendants' own website that the Plaintiff was barred from access to the NYCIS. All these actions continue to be taken by the defendants against the Plaintiff any adjudication of any evidence supporting this empty statement as mandated by PHL §12-a.

34.    To keep things into context, the Defendants Giovannetti, himself is a head investigator and the Director of the DOH investigations unit team which was purposely formed by the DOH in January 2021 at the height of the COVID 19 pandemic to hunt down healthcare practitioners and other individuals who provided fake COVID 19 documentations and fraudulent COVID 19 vaccine documentations to individuals seeking to avoid the New York vaccination mandates imposed on healthcare practitioners and the public as a whole.

35.    The team was actually given a name with the permission of the then Commissioner Mary Basset. The team was called Department of Health Vaccination Complaint Investigation Team and was tasked with looking into complaints of COVID19 vaccine fraud. https://health.ny.gov/press/releases/2021/2021-10-01_doh_statement.htm.

36.    In its inception, and during the COVID 19 emergency, the team uncovered various individuals who provided fake vaccination cards to their clients or patients and fake vaccine documentation. https://health.ny.gov/press/releases/2021/2021-10-01_doh_statement.htm; https://www.health.ny.gov/press/releases/2022/2022-12-20_vaccination_card.htm

https://wjla.com/news/nation-world/ny-man-facing-felony-charges-for-presenting-a-fake-vaccine-card.

https://www.msn.com/en-us/news/crime/ny-nurse-guilty-in-15m-covid-vaccine-scam-blames-government-mandates/ar-AA1gOEQN.

https://www.health.ny.gov/press/releases/2024/2024-01-17_baldwin_midwifery.htm.    The Plaintiff was not one of them.

36.    Clearly, the team headed by Director Giovanetti gathered celebrity status and notoriety during the COVID 19 emergency vaccination mandates during 2021-2022. But their purposes and the very nature of their existence became irrelevant once the COVID 19 vaccine emergencies expired.

37.    On May 24, 2023 the DOH announced as follows: "Due to the changing landscape of the COVID-19 pandemic and evolving vaccine recommendations, the  DOH  has begun the process of repealing the COVID-19 vaccine requirement for workers at regulated health care facilities. Throughout the public health emergency, this vaccine requirement served as a critical public health tool, helping to protect both health care workers and the patients under their care. As the repeal of this regulation awaits consideration for approval by the Public Health and Health Planning Council (PHHPC), the Department will not commence any new enforcement actions." https://www.health.ny.gov/press/releases/2023/2023-05-24_statement.htm."

38.    On October 4, 2023, the COVID-19 vaccine mandate for health care workers in New York was officially repealed. On September 18, 2023, the  DOH  (NYSDOH) submitted a Notice of Adoption to repeal 10 N.Y.C.R.R. 2.61 (the Regulation), which was the emergency regulation requiring covered health care employers to ensure that their personnel were fully vaccinated against COVID-19.

39.    The vaccine mandates imposed upon private employers in New York City were terminated on November 1, 2022.

40.    On September 12, 2022 the New York State Governor terminated the COVID 19 state of emergency and did not extend it beyond September 12, 2022.

41.    After the termination of the COVID 19 emergency the defendants vested themselves with formidable extra judicial powers which the legislature never gave them.

42.    The self-vesting with authority is accompanied by unconstitutional acts as specifically alleged below.

43.    To bypass the quasi-judicial adjudicative due process seps mandated by PHL Sec. 12-a and State Administrative Procedure Act Secs. 301-401 and to further short circuit any judicial or administrative scrutiny of their unconstitutional and unauthorized actions, the state and city defendants devised a system described below, which has the net effect of continuously employing the following approach: (a) specific to this case - ignore Plaintiff's NYCIR application - EX C hereto - and deliberately fail to communicate with him in any manner regarding the status or decision made by the defendants on the application; (b) specific to this case and other cases, fail to offer any notice and opportunity to be heard pursuant to PHL Sec. 12-a regarding any decision taken by the defendants with respect to plaintiff's application and failing to provide the Plaintiff with any rationale for the decision or with any decision at all in accordance with PHL Sec. 12-a and SAPA Secs. 301 et.seq; (c) specific to this case - issue unconstitutional overboard subpoenas - ex B - which violate the Fourth Amendment and which are signed by the head investigator in violation of the Fourth amendment; (e) specific to this case - illegally obtain medical records from unsuspecting health care providers with the unconstitutional subpoenas; (f) specific to this case and other cases -  set up a web site where the defendants can act against the healthcare providers

13

extra judicially and outside any administrative or judicial scrutiny - EX A hereto; (g) specific to this case summarily deny access to the healthcare practitioner to NYCIR without any hearing or formal determination and without any formal notice of such block or denial and further without any notice of the reason for the block; (h) summarily brand the healthcare practitioner on defendants' web site as vaccine fraudsters (https://health.ny.gov/prevention/immunization/schools/fraud.htm) - EX A - without any hearing or formal determination, and pass off the branding on the website as a formal DOH determination, without any due process afforded to the plaintiff as mandated by PHL § 12-a; (i) specific to this case and other cases - impose a license restriction on the healthcare practitioner's license by acting without any authority and directing schools to refuse paper records of vaccinations regarding the health care practitioner's patients; (j) specific to this case and other cases - bypass the entire extensive license disciplinary process which is safeguarded by a wide array of due process provisions - PHL Sec. 230, by simply posting Plaintiff's name to the branding list described above. The foregoing allegations are directly connected to specific supporting allegations set forth below.

44. The factual pattern described by the Plaintiff in this verified complaint identifies each step in the foregoing scheme which the Plaintiff was subjected and continues to be subjected by the state defendants in violation of his constitutional rights as discussed below.

45. At the core of defendants' actions alleged in this complaint is their purported authority to enforce PHL §2168 regarding the central vaccination databases set in the said statute. Parenthetically, enforcement of PHL §2168 falls upon the state defendants not the City defendants. The City defendants are solely tasked with the ministerial job set in the statute of maintaining a separate database from the state. As discussed below, PHL §2168 does not vest the state defendants with any of the acts which amount to a continued violation of Plaintiff's Fourteenth and Fifth

Amendment rights. Purporting to act under the color of PHL §2168 while continuously and prospectively violating Plaintiff's constitutional rights is at the core of plaintiff's prayer for relief under 42 USC Sec. 1983.

### (ii)    Introduction to the Plaintiff - factual background.

### (a)    In general.

46.    Dr. Nesselson is a physician licensed to practice medicine in the state of New York. His license number is 165950 issued on 04/18/1986. His office is located in New York City at the address mentioned hereinabove. He is a pediatrician and his practice is focused on pediatric patients. Dr Nesselson attended medical school at the Abraham Lincoln School of Medicine at the University of Illinois from September, 1978 and graduated in December, 1982. He served my Pediatric Internship from July 1983 through June 1984, and subsequently his Pediatric Residency from July 1984 through June 1986 at New York University Medical Center.

48.    From September 1986 through August 1993, Dr Nesselson was an attending physician in the outpatient department at Metropolitan Hospital Center in New York City, and was bestowed the academic credential of Assistant Professor of Clinical Pediatrics from New York Medical College, under whose auspices he taught medical students and supervised interns and resident physicians.

49.    From 1990-1992, Dr Nesselson attended as a non-degree candidate, the Pacific College of Oriental Medicine. In 1993-1994, he attended the Natural Gourmet Institute to identify foods as tools for healing. Dr Nesselson opened my private practice in Pediatric and Adolescent Medicine in its current location at 146 W 95th St New York, NY 10025in June, 1989.

50.    In July 2005, Dr Nesselson temporarily  relocated to the island of Kauai in Hawaii.

He maintained a practice of phone consultations with his New York patients, and traveled to New York four times yearly to see patients for a concentrated two to three weeks.

### (b)    <u>Prior disciplinary action - not applicable to the present facts.</u>

51.    The Plaintiff did have a prior disciplinary history  in New York in 2007. Charges were     issued     by     the     Office     of     professional     Medical     Conduct https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/FileDownloadAction.a ction?finalActionId=6907&fileName=BRD+165950.pdf&fileSeqNum=1. The sum and substance of the charges was that Dr. Nesselson's medical records reflected that patients A and B received forms representing to schools and camps that they were vaccinated while the medical records of patients A and B did not reflect receipts of such vaccinations. See Ex D hereto.

52.    The Plaintiff entered into a consent Order dated November 7, 2007 pursuant to which he had to pay a $10,000.00 fine and was placed on probation for thirty six months practicing with a practice monitor who reviewed Plaintiff's medical records to ensure compliance with the provisions of the order. The Plaintiff successfully completed the probation of thirty six month and the conditions of the order of 2007 terminated with the period of the probation and Plaintiff's compliance with the terms of the same order on November 6, 2010, some fourteen years before the actions of the defendants described  in this case took place.

53.    Notwithstanding the self-termination of the 2007 order, in 2011 the OPMC purported to investigate violations of the defunct order of 2007. The alleged investigation pertained to Plaintiff's inability to pay the malpractice premium of $84,000.00 due to the medical expenses which he had to outlay on behalf of an immediate ill member of his family. I had nothing to do with the 2007 Order or its terms.

54.     As a result of the same, in exchange for dropping the investigation, the Plaintiff agreed to the "modification" of the initial expired order.   On April 4, 2011 an additional modification order was issued upon the Plaintiff's "voluntary application". See EX E annexed hereto. As it can be seen from the same Order modification, the main provision of the conditions of the Order was the maintaining of malpractice insurance policy with a limit of $2million per occurrence and $6 million aggregate per year.

55.     The second disciplinary order EX E  factually has no relevance to the issues in this case. The first disciplinary order also does not have any relevance to the facts of this case because the probationary period expired by its own terms on April 9, 2014.

56.     The reason for the disclosure of Plaintiff's public discipline is to show the Court that the current unjustified and outright unconstitutional, unauthorized    actions taken by the defendants against the plaintiff described below  are not and cannot be predicated upon or related to any prior disciplinary orders of the BPMC which expired by their own terms respectively fourteen and ten years before the actions subject to this litigation took place.

57.     Significantly, at no time was Dr. Nesselson's license ever restricted by the Board of Professional Medical Conduct to bar him from providing vaccinations to his pediatric patients and provide medical records to school districts evidencing such vaccinations. No such restriction on vaccinations was even imposed even in the First disciplinary Order of 2007 - EX D in the second disciplinary action EX E hereto,  or at any time thereafter by the BPMC.

58.     Because there was no vaccine fraud charge or license restriction imposed upon the Plaintiff by the BPMC the defendants have no authority to impose one upon the Plaintiff by simply ignoring his registration for NYCIR - EX C and then falsely declaring on their official website that the Plaintiff was suspended from the NYCIR, that he is associated with vaccine fraud  and that no

paper documentation of vaccination should be accepted from the Plaintiff. As discussed below, there is no authority for such summary action without the due process steps mandated by PHL §12-a or without a disciplinary order having been issued by the BPMC pursuant to PHL Sec. 230 and 203-a after the completion of all of the due process steps afforded by PHL Sec. 230.

(iii)    **Plaintiff's continued practice of medicine and recent relevant facts which precipitated defendants' conduct and the commencement of this action.**

59.    Specifically, between the completion of the period of probation relevant to the first disciplinary order, in 2010, through recently in July 2024 when the defendants took and continue to take summary action against Plaintiff's license without due process,  the Plaintiff practiced medicine as a pediatrician at his current office address without any restrictions. he vaccinated his pediatric patients and he routinely provided paper documentation to schools evidencing such vaccinations.

60.    In order to gain leverage over the mother in a custody battle,  on or about March 2022, the father of Plaintiff's pediatric patient" X", maliciously  filed a false complaint with the Office of Professional Medical Conduct ("OPMC") which falsely accused  the Plaintiff of falsification of vaccine documents indicating that his daughter was vaccinated with CDC mandatory vaccinations, when the complainant alleged that she was not.

61.    Those documents never existed and the patient's chart clearly indicated that she was never vaccinated because the parents were vaccine hesitant and did not allow patient X to receive vaccinations.

62.    On November 5, 2022 the New York Post published in its metro section an article titled " State probing NYC pediatrician for alleged vaccine record fraud — again". Making public

the allegations of the accusations of the father of patient X, the publication revealed what the

OPMC was investigating. EX G hereto. The article stated as follows:

> "pediatrician disciplined in 2007 in an unprecedented case of faking vaccine records has been hit with another state probe for allegedly doing it again, The Post has learned. A parent said he reported Dr. Mark Nesselson to the state     Office for Professional Medical Conduct after seeing a falsified vaccination for his child allegedly prepared by the doctor. The father said his daughter had not been seen by the pediatrician on the day recorded for one of the vaccines in 2021, which was on an official form provided by Nesselson. The d doctor also gave the family a form for insurance reimbursement that indicated an office visit had taken place that day for the shot when it     had not, the dad said. The purported phony  record included the MMR, polio vaccine and other standard shots for toddlers. It was allegedly created by Nesselson for the child's mother, presumably to be used for school admissions, according to a copy of the parent's complaint to the state."

63.     Apparently parroting the father's complaint to the OPMC which was either illegally

leaked to the paper by state officials in violation of PHL §230(10)(a)(v) and/or  by the complainant,

the newspaper account contained  false accusations which as set forth above did not exist in reality.

64.     In response to the complaint, the Office of Professional Medical Conduct

("OPMC") requested the medical record of patient X on or about March 2022 which was the time

when the complaint was revealed to Dr. Nesselson.  Dr Nesselson turned over that record of patient

X which revealed that the complaint was baseless, and nothing was done by the OPMC with

respect to this complaint.

65.     On February 27, 2024, after completing all of the requirements mandated by the

City defendants to apply for access to the NYCIR, the Plaintiff successfully applied for access to

the system which generated a registration number R-33813072036601368 and a message that the

registration was completed. The registration also stated that the City defendants and the NYCIR

system will contact the Plaintiff by email with a facility code. See Ex C hereto.

66.     Subsequent to the completion of the registration the Plaintiff repeatedly called the

NYCIR provider support team at the telephone number provided by the City defendants on the

registration confirmation. EX C hereto. He was told by defendants' employees repeatedly that he will be contacted shortly by the City or state defendants, their servants and assigns.

67.    Through this date the Plaintiff was never contacted by anyone of the defendants regarding any issue related to the status of his NYCIR application - EX C hereto. He was never told that his access to NYCIR was barred or denied nor was he ever provided a reason for the City defendants' failure and refusal to contact him with respect to his application of access to the NYCIR.

68.    The Plaintiff was never "suspended from the NYCIR" as falsely claimed by the state defendants on their "vaccine fraud website" EX A hereto. The Plaintiff was branded by the state defendants as a vaccine fraudster for no disclosed or known reason and without any formal determination or adjudication supporting this branding.

69.    No statutory provision empowers the state defendants to maintain a branding list on which they place physicians' names at whim as a pretext for barring them from administering vaccinations to school age children without due process afforded by the Fourteenth Amendment and by PHL §12-a in cases heard by the Commissioner.

70.    All of a sudden in July 2024, in a rapid succession of events, the state defendants did the following against the Plaintiff: (a) issued an open ended subpoena dated July 2, 2024 which violates and continues to violate the Fourth Amendment for the reasons articulated below - EX B hereto ; (b) upon information and belief conspired with the City Defendants and with the state Office of Professional Medical Conduct to continuously violate Plaintiff's due process rights safeguarded by the Fourteenth Amended; (c) obtained the cooperation of the OPMC in concocting and staging a general inquiry into Plaintiff's general business affairs in hopes of finding violations of the law. EX F hereto is the letter from the OPMC dated July 22, 204 demanding records for

patients who upon information and belief were identified by the defendants from their NYCIR

extrapolations to the OPMC. It is an elementary principle of Fourth Amendment rights that no

agency of the government may conduct a general inquiry into Plaintiff's business affairs in hopes

of finding violations of the law.

71.     Simultaneously therewith in July, 2024 the state defendants placed the Plaintiff's

name      on      the      branding      list      maintained      by      the      state      defendants      at

https://health.ny.gov/prevention/immunization/schools/fraud.htm EX A hereto without any form

of  notice, without any hearing and without any formal determination or explanation stating as

follows:

> "The New York State Department of Health wants to help schools recognize red flags on
> immunization records to stop fraud. Schools are on the frontlines in the defense against
> vaccine preventable diseases and have the responsibility to reject immunization records
> they believe to be fraudulent based on their knowledge and assessment of the facts."
> "Be aware when reviewing school vaccination records (these directives may be expanded
> to include records issued by a provider on any date as investigations continue):"
>
> Mark Nesselson, MD – Is based in New York, NY and currently suspended from using the
> Citywide Immunization Registry as of 07/31/2024. Paper-only records of vaccinations
> administered after this date from this provider must not be accepted.
>
> When students are impacted by school vaccination fraud:
>
> School administrators must immediately exclude any student who no longer meets school
> immunization requirements due to a fraudulent immunization record;
>
> School nurses or administrators must notify parents that the student must be excluded and
> which vaccines are required to return to school;
>
> School nurses or administrators must notify their county health department of all
> immunization-related exclusions; and,
>
> Excluded students must receive the next required dose for each incomplete vaccine series
> before returning to school.
>
> Students must then stay up to date using the minimum dose intervals in the ACIP Catch-
> Up Schedule or be excluded again when they become overdue for follow-up doses.

72.    The state defendants then provided a link on their web site which leads to the attachment called "red flags". EX A hereto. This is an arbitrary list of criteria which was never adopted by any regulation of the Commissioner.  Pursuant to this branding list  the state defendants contend that any of the "red flags" (which is pretty much anything they chose it to be) identified by them renders vaccines fraudulent and the administering healthcare provider a vaccine fraudster whose vaccination records must be rejected. EX A hereto. Significantly, PHL §2168 directs the defendants to enact regulations to bring about the implementation of the provisions of the statute regarding the establishment of NYSIIS  and NYCIR and facilitation of application and grant of access to the same databases. The defendants did enact 10 NYCRR § 66-1.2 pursuant to the authority given by the legislature in PHL §2168. Nothing in those regulation set forth the criteria published in the "red flags" section of Exhibit A.

73.    Moreover, before branding anyone including the Plaintiff as a vaccine fraudster and before giving anyone "directives" to invalidate vaccinations administered by the Plaintiff and to reject his paper vaccination documentation, while at the same time summarily barring the plaintiff from access to the NYCIR indefinitely and prospectively from the time of the completion of the application - EX C - without any reason, without any formal  hearing or without any formal determination as mandated by PHL Sec. 12-a, and without any communications the defendants have to show that they have authority to act.

74.    Decisively the defendants do not have any such authority to act in derogation of Plaintiff's constitutional rights while dispensing authoritative mandates, restricting Plaintiff's license without due process and barring the Plaintiff from access to the NYCIR by administrative fiat.

75.    Neither the relevant statute PHL §2168 nor the Commissioner's relevant regulations

10 NYCRR § 66-1.2 regarding registration with NYCIR  nor the City Commissioner's regulations regarding requirements for registration with NYCIR contained in the NYC Health Code and Rules §11.07 contemplate either the state or the city defendants having the authority to: (a) administratively obstruct registration to NYCIR by simply failing to act on Plaintiff's application; (b) refuse to communicate with the Plaintiff regarding any decision; issuing a registration number acknowledging Plaintiff's registration with the NYCIR; (c)  blasting Plaintiff's name on an official government web site and branding the Plaintiff as a vaccine fraudster without any due process or formal due process or formal finding by the commissioner in accordance with PHL §12-a that he has engaged in any such conduct related to the posting; (d) direct schools not to accept paper proof of vaccination from the Plaintiff while (e) falsely state that the Plaintiff was suspended from the NYCIR when in fact no such decision was made or could be made without a hearing and the due process mandates of PHL §12-a.

77.    When it comes to their duties regarding the grant of access to the NYCIR  both the state and the city defendants have an affirmative duty to do the following: (a) devise and provide a process and a method  by which the applications are submitted and processed - See PHL §2168(8)(a); (b) process each application and afford healthcare practitioners access to the database promptly in order to ensure the mandatory reporting compliance with the provisions of PHL §2168(3)(a) and 10 NYCRR § 66-1.2(8)(b)(1) and  10 NYCRR § 66-1.2(8)(b)(2).

78.    In this case, the defendants have miserably failed to performed the second ministerial task mandated by PHL Sec. 2168.

79.    In effect the defendants' posting of Plaintiff's name on the branding bulletin naming him as a vaccine fraudster - EX A hereto - along with the directives given to school districts on the web site to reject vaccination records from the Plaintiff and the continued posting of the same

is a continuous violation of Plaintiff's due process rights on many levels for the following reasons:

(a)    The Plaintiff has a property interest in his medical license which cannot be encumbered or taken away without due process. No due process was involved in the failure to process Plaintiff's NYCIR application or in issuing de facto license restrictions against the plaintiff and summary directives to the school officials  on the branding site. EX A;

(b)    At the time when the posting was issued in July 22, 2024, the Plaintiff had no restriction, no probation terms and no limitations in his license. The publication had the de facto effect of imposing a license limitation without due process ;

(c)  A formal determination of vaccine fraud cannot be made without formal due process hearings and findings conducted under either PHL §12-a by the Commissioner of by the BPMC under PHL §230 and cannot be substituted by unsupported accusations posted on defendants' branding site, as it was done here;

(d)  Vaccine fraud is a federal crime, a state crime and grounds for license disciplinary action under Education Law §6530. In the case of an administrative disciplinary action only the New York BPMC can impose discipline and find that the Plaintiff engaged in vaccine fraud and his license should be restricted insofar as providing vaccinations to his pediatric patients. Sec PHL §230 and PHL §230(a)(3);

(e)    No determination of criminal conduct or conduct which amounts to vaccine fraud has been made by any Judge, jury, the BPMC or any other tribunal of competent jurisdiction at any time immediately preceding defendants' posting;

(f)    No vaccine fraud has been determined to exist at any time  after the consent Order of 2007 and no restrictions on Plaintiff's license regarding vaccine administration have been imposed by the BPMC against the Plaintiff at any time.

(g)     No restriction has been imposed upon the Plaintiff in his practice of medicine including vaccination of his patients at any after the completion of the probation period relating to the order of 2007 or during the term of the probation. No criminal conviction of vaccine fraud exists or ever existed at the time of this continued false posting.

(h)     The defendants have no authority to continue to violate Plaintiff's constitutionally protected rights by maintaining the false information on the branding site - EX A regarding their presuppositions and accusations of vaccine fraud and associating the plaintiff with the same without any due process hearing, and formal due process as mandated by PHL §12-a and PHL §230.

(i)     The defendants' continued directives given to school districts through their web site EX A - to reject Plaintiff's vaccination records regarding pediatric patients based upon the statement that the Plaintiff was "suspended" from the NYCIR is nothing more or less than a license restriction and a false accusation and a continued violation of Plaintiff's Fifth Amendment right to practice medicine without unreasonable government interference. That is especially the case where such directives are given without any formal judicial or administrative order or determination issued after the full array of due process is afforded to the plaintiff.

80.     Significantly, the Plaintiff was unaware of the state defendants' postings on the branding site and the directives given by the state defendants to school districts until on or about November 14, 2024. After he provided the OPMC investigators with 12 unrelated and random medical records in response to the  July 22, 2022 letter from the OPMC - EX F - the Plaintiff continued to vaccinate his patients and provide paper documentation of such vaccinations through November 14, 2024.

81.     On November 14, 3024 the Plaintiff learnt from a patient's parent that school

districts were circulating memoranda saying the New York Health Department does not allow the Plaintiff to provide vaccinations to his pediatric patients who are students in public school districts and directs the school districts to reject Plaintiff's vaccination records.

82.    The school district memoranda specifically directed that the  school authorities to reject plaintiff's vaccination records and required children vaccinated by the Plaintiff to test for titers and provide testing results to the school nurse.

83.    An example of the text of such email is annexed hereto as Ex H . It states verbatim as follows:

> Please request that your doctor test your children for the following titers (IgG), and that you submit the lab report directly to us by December 13, 2024. Note that 8th grade students with negative titers will require further vaccination prior to traveling internationally on an LREI trip. Note that these are blood tests that usually result within 1 week. This deadline will allow you the time to receive any necessary vaccines. Students in other grades with negative titers are recommended to have additional doses of vaccines, to be discussed on a case-by-case basis in consultation with the Department of Health.
>
> - MMR (measles, mumps and rubella)
> - Varicella (chickenpox)
> - Hepatitis B
> - Polio (tests for type 1 and type 3 are available, type 2 is not testable at this time).
> - Pertussis IgG (6-11th grade students only)
> - Neisseria Meningitidis IgG (6-11th grade students only)
>
> Please note that the lab report must contain your child's name, date of birth, lab name, provider name and phone number.

84.    The branding post which continues to violate plaintiff's due process rights by imposing a de facto license restriction on Plaintiff's medical license through the prohibition of vaccine administration states as follows:

> Mark Nesselson, MD – is based in New York, NY and currently suspended from  using the Citywide Immunization Registry as of 07/31/2024. **Paper-only records of    Paper-only records of vaccinations administered after this date from this provider    must not be accepted.**
>
> When students are impacted by school vaccination fraud:

26

School administrators must immediately exclude any student who no longer meets school immunization requirements due to a fraudulent immunization record;

School nurses or administrators must notify parents that the student must be excluded and which vaccines are required to return to school;

School nurses or administrators must notify their county health department of all immunization-related exclusions; and,

Excluded students must receive the next required dose for each incomplete vaccine series before returning to school.

Students must then stay up to date using the minimum dose intervals in the ACIP Catch-Up Schedule or be excluded again when they become overdue for follow-up doses.

85.    In short, the existing and prospective posting of the state defendants - EX A combined with directives given to school districts to reject Plaintiff's paper only medical records proving vaccinations acts in real life as a de facto license restriction without any due process mandated by PHL Secs. 12-a and PHL §230.

86.    Only BPMC may impose license restrictions pursuant to PHL §230-a only after affording the plaintiff  full array of the due process remedies imposed by PHL §230. No such process was followed here.

87.    The defendants have no authority to direct schools to reject plaintiff's paper only records while misrepresenting that the Plaintiff was "suspended" from NYCIR. In fact, the defendants simply ignored Plaintiff's application, failed to communicate with him in any way or manner and sat by idly while artificially creating an issue and a disciplinary matter while none existed until their affirmative failure to process the application. In addition, the defendants themselves admit in the attachment to the posting EX A hereto **that paper records signed by a licensed New York practitioner are adequate proof of vaccination**. For his entire career through July 2024 the Plaintiff submitted paper records to school districts and the districts

approved the same.

**(iv)**     **The context of this action is the framework of Plaintiff's constitutional rights**

88.     In order to set in context the events of July 2024 and the background and reasons for the filing of this complaint it is important to understand the basis of the law suit and the law pursuant to which the defendants are purporting to act or fail to act.

89.     The understanding of the foregoing issues is crucial to pleading the unconstitutional acts taken under the color of New York law by the state officials in violation of Plaintiff's constitutional rights which give rise to the relief sought under 42 USC Sec. 1983, and 28 USC Sec. 2201 et.seq.

90.     It is equally important to consider the fact that the state defendants unequivocally state and believe that when it comes to the administration and application of PHL §2168 and in general when it comes to any of their actions relevant to this case, they are exempt from the law and the due process mandates of the Fourteenth Amendment.

91.     It is the defendants' legal position that any licensed healthcare practitioner such as the plaintiff is not entitled to any pre or post deprivation due process rights while his license is being de facto restricted under the color of the purported enforcement of PHL Sec. 2168.

92.     Therefore, it is crucial to consider the provisions of PHL §2168 which is the main statute pursuant to which the defendants are acting under the color of state law to violate Plaintiff's constitutional rights.

(v)     **An explanation of the statute establishing the New**
        **York Statewide Immunization Information System**
        **("NYSIIS" or the New York Citywide Immunization**
        **Registry ("CIR") and what are the true provisions of the**
        <u>**statute as they apply to the Plaintiff.**</u>

93.    An explanation of the purpose and substance of PHL §2168, which is the "color of state law" statute under which the defendants are acting unconstitutionally and the accompanying regulations 10 NYCRR §66-1.2 enacted by the state defendants pursuant to the state statute is now in order so as to keep matters in context.

94.    In 2006 the legislature enacted PHL §2168 thereby creating the New York State Immunization Information System ("NYSIIS") for the entire state and the Citywide Immunization Registry for New York City ("CIR").

95.    In short, both the NYSIIS and the NYCIR are centralized database system that keep track of all immunization in New York.

96.    The purpose of the enactment of PHL §2168 is stated in the statute itself. While the statute mixes and matches vaccine reporting and lead level testing reporting, for the purposes of this complaint only the provisions related to the central vaccination reporting system are discussed.

97.    PHL §2168(1) provides in relevant part as follows:

The [NYS department of Health] is hereby directed to establish a statewide automated and electronic immunization information system that will serve, and shall be administered consistent with, the following public health purposes:

(a) collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases....

(b) establish the public health infrastructure necessary to obtain, collect, preserve, and disclose information relating to vaccine preventable disease as it may promote the health and well-being of all children in this state;

(c) make available to an individual, or parents, guardians, or other person in a custodial relation to a child or, to local health districts, local social services districts responsible for the care and custody of children, health care providers and their designees, schools, WIC

programs, and third party payers the immunization status of children; and

(d) appropriately protecting the confidentiality of individual identifying information and the privacy of persons included in the statewide immunization information system and their families.

98.    The very purpose of the statute as cited in PHL is the centralized gathering of information regarding vaccination and making the same available to the individuals and entities specified in PHL §2168(1)(c) while " appropriately protecting the confidentiality of individual identifying information and  the privacy of persons included in the statewide immunization information system and their  families."

99.    PHL §2168(1) was never intended to be a sword in the hands of the state and city defendants used for summarily restricting the licenses and the healthcare practice of New York healthcare practitioners who appear on defendants' radar. It was never intended to: (a)  give state administrative officials the powers to act by administrative fiat against a healthcare practitioner; (b) empower state officials to  take summary administrative actions against healthcare practitioners by summarily invalidating bona fide vaccinations and in general create chaos under the cover of both the investigative powers conferred upon the Commissioner; (iii) empower state officials to impose summary license restrictions against healthcare practitioners without the minimum due process mandates of hearing and opportunity to be heard. As set forth below, this is exactly how the defendants in this case have used and are using the color of PHL §2168 to deprive the Plaintiff of due process and to violate plaintiff's Fifth and Fourteenth Amendment rights .

100.    The statute speaks of the establishment of two separate centralized database systems by the State DOH in PHL §2168 (2)(b) and PHL §2168(2)(c) for the purposes of vaccine database reporting and maintenance as follows:

(b) The term "statewide immunization information system" or "system" shall mean a statewide-computerized database maintained by the department capable of collecting,

storing, and disclosing the electronic and paper records of vaccinations received by persons under nineteen years of age.

(c) The term "citywide immunization registry" shall mean the computerized database maintained by the city of New York department of health and mental hygiene capable of collecting, storing, and disclosing the electronic and paper records of vaccinations received by persons less than nineteen years of age....

101.     Having clarified what the purpose of PHL §2168 is and what it establishes, we now turn on the obligations that PHL §2168 impose upon New York healthcare practitioners including the Plaintiff herein.

102.     PHL §2168 (2)(d) provides that:

(d) The term "health care provider" shall mean any person authorized by law to order an immunization or analysis of a blood sample for lead or any health care facility licensed under article twenty-eight of this chapter or any certified home health agency established under section thirty-six hundred six of this chapter; with respect to a person seeking or receiving a health care service from the health care provider.

103.     PHL §2168(3)(a)(i) imposes the following obligation on healthcare providers:

Any health care provider who administers any vaccine to a person less than nineteen years of age... or, on or after September first, two thousand nine, conducts....immunizations received by a person less than nineteen years of age in the past if not already reported, **shall report all such immunizations...within fourteen days of administration of such immunizations**.... Health care providers administering immunizations to persons less than nineteen years of age in the city of New York shall report, in a format prescribed by the city of New York commissioner of health and mental hygiene, all such immunizations to the citywide immunization registry....

104.     Thus, the statute PHL §2168 imposes an obligation on healthcare providers to report vaccinations to the central database of NYCIR. Where the defendants fail to process Plaintiff's application for access to the NYCIR, as they did in this case and fail to communicate with him at all and instead act against him without any due process, as they did here, the defendants are creating a de facto disciplinary issue for the Plaintiff, while depriving him of the due process

protections of PHL §12-a, PHL §230 and State Administrative procedure Act Secs. 301 though

401.

105.    PHL §2168(3)(b)(i) provides in relevant part as follows:

**(i)** Any health care provider who administers any vaccine to a person nineteen years of age or older, may report, with the consent of the vaccinee, all such immunizations to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations. Health care providers administering immunizations to persons nineteen years of age or older in the City of New York may report, with the consent of the vaccinee, in a format prescribed by the city of New York commissioner of health and mental hygiene, all such immunizations to the citywide immunization registry.

106.    PHL §2168(8)(a)  provides in relevant part as follows:

Access and use of identifiable registrant information shall be limited to authorized users consistent with this subdivision and the purposes of this section. (a) The commissioner **shall provide a method by which authoriz**ed users apply for access to the system. For the City of New York, the commissioner of health and mental hygiene **shall provide a method by which authorized users apply for access to the citywide immunization registry.**

107.    In this case the NYC Commissioner does provide a method by which the Plaintiff

applied    for    access    to    the    NYCIR.    It    can    be    found    at    https://a816-

healthpsi.nyc.gov/NYCMED/Account/Login. The Plaintiff obtained an account and applied for

registration and was provided a registration number. EX C hereto.

108.    PHL §2168(8)(a) does not contemplate the current case scenario which involves

imposing a duty on the state and the city defendants to merely provide a system by which

application for access to the centralized database can be submitted and then ignore the applications

and not communicate with the applicant. Such conduct effectuates a de facto denial of the

application without a reason or due process.

109.    There is no verification mechanism set for by the City or the state defendants other

than a telephone number for the Plaintiff  to call to inquire about the status of the application. See

EX A hereto. If a healthcare practitioner keeps calling the defendants and no one responds or returns his call, as it is the case here,  the net effect is the stonewalling of an application and the imposition of a de facto license restriction without due process.

110.     The City defendants have no alternative or discretion but to grant access to the NYCIR to a licensed practitioner once he meets the qualifications of licensure and the conditions set in the application which the Plaintiff did here. Both the relevant statute and the Commissioner's regulation provide for the same. The statute PHL §2168 as well as Commissioner's own regulations 10 10 NYCRR §66-1.2 is clear as to who shall have access.

111.     PHL §2168(8)(c) provides in relevant part that:

(c) health care providers ....**shall have access to the statewide       immunization information system**.... only for purposes of submission of information about vaccinations received by a specific registrant, determination of the immunization status of a specific registrant....review of practice coverage, generation of reminder notices, quality improvement and accountability, including professional responsibility proceedings of the office of professional medical conduct and the state education department, and printing a copy of the immunization or lead testing record for the registrant's medical record, for the registrant's parent or guardian, or other person in parental or custodial relation to a child, or for a registrant upon reaching eighteen years of age.


112.     Commissioner's regulation 10 NYCRR §66-1.2 provides that:

(a)((3) Health care provider for the purposes of this section shall mean any person authorized by law to order an immunization.

(b) Mandated reporting.

(1) Mandated reporters to NYCIR  and the CIR include any health care provider, as defined in section 66-1.2 who administers an immunization or conducts a blood lead analysis of a sample.

(2) Mandated reporters must report any immunization to a child less than 19 years of age to either NYCIR  or the CIR, depending on the location of administration of the vaccine.

(c) Information required to be reported, methods of reporting, exceptions and timeliness of reporting.(1) Information required to be reported to NYCIR  or the CIR, to the extent

available to the provider shall include: the patient's name (first, middle and last); date of birth; gender; race; ethnicity; address, including zip code; telephone numbers; birth order (if multiple birth); birth state/country; mother's maiden name; mother's or other responsible party's name (first, middle and last); vaccines for children program eligibility; Medicaid number; and vaccine administration date, type, lot number and manufacturer, except as noted in paragraph (3) of this subdivision. A provider should report elements for any additional data fields in NYCIR or the CIR when available.

(d) Allowable access levels and permitted uses of NYCIR and/or CIR data by authorized users specific to the organization they are representing.
(1) Allowable access levels.
(i) Read/write access. Only health care providers providing services to the registrant and State and local Department of Health staff may compile reports, read immunization information, enter immunization information and change immunization information, with limitations as specified below.

113.    There is no provision in the state statute PHL §2168 or anywhere else which gives the state or the city defendants discretion to shut down access to the NYCIR to healthcare providers who are mandated to report the data of vaccinations administered to patients under 19 years of age by simply ignoring Plaintiff's application for access to NYCIR.

114.    Entities and individuals **other than healthcare providers** who are mandated to report vaccinations in the NYCIR by PHL §2168(8)(c) or by Commissioner's regulations 10 NYCRR §66-1.2 can ask permission to access the NYCIR and the NYCIR database for limited purposes. Those recognized and the permitted limited purpose access are listed in 10 NYCRR §§66-1.2(d)(i) through (xii) and PHL §2168(8)(d). **None of them are healthcare practitioners such as the Plaintiff** who are mandated to report vaccinations to the NYCIR or NYCIR .

115.    With respect to requests for access made by individuals and entities which and who are not subject to the mandatory reporting requirements, the legislature provided the discretionary rejection provision of access to the central database system PHL §2168(9).

116.    That statute provides that:

"...the commissioner may judge the legitimacy of any request for immunization system information and may refuse access to the statewide immunization information system

based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation. For the city of New York the commissioner of health and mental hygiene may judge the legitimacy of requests for access to the citywide immunization registry and refuse access to the immunization registry based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation."

117.    In this case, the Plaintiff does not fall in the discretionary access category contemplated by PHL §2168(9). The commissioner's discretionary refusal for access to the state and City database provided by PHL §2168(9) by definition does not apply to healthcare practitioners mentioned in PHL §2168(8)(c) simply because healthcare practitioners must report vaccine information, not retrieve vaccine information to determine eligibility of school/college admission and vaccination status. See PHL §2168(3)(b)(i).

118.    The remaining provisions of PHL §2168(9) through PHL §2168(14) are not applicable to the facts of this case.

**(vi)    An explanation of the due process protections afforded to physicians who are subject to the provisions of the New York Public Health Law.**

119.    The degree and nature of procedural due process afforded to the plaintiff under the facts of this case is dictated by several factors; (a) the state action involved in this case; (b) plaintiff's status as a licensed physician and his property interest in his license; (c) the statutory due process provisions afforded by the legislature to parties subjected to state and city defendants' action; (d) the authority or lack of authority of the state and city defendants to act against the Plaintiff in the manner described hereinabove.

120.    With the foregoing paradigms laid out, to elucidate the argument of violation of Fourteenth Amendment due process, a seriatim discussion of each one of the elements set forth above follows.

**(A)    The state and city officials' actions being challenged
as violative of Plaintiff's due process rights.**

121.    All of the above described actions which were affirmatively taken by the state and city officials against the Plaintiff by administrative fiat continue to violate Plaintiff's constitutionally protected due process right and his rights safeguarded by the Fifth and Fourteenth Amendment to practice his vocation without unreasonable government interference.

**(B)    Plaintiff's status as a licensed physician in possession
of an unencumbered medical license entitles him to
due process with respect to any governmental action
aimed at imposing a license limitation or professional
discipline.**

122.    The Plaintiff is a licensed physician and he has an unencumbered license to practice medicine including the administration of vaccines to pediatric patients.

123.    Any official state action aimed at restricting Plaintiff's license and practice of medicine has to be taken by the agency which was created by the legislature for such purposes namely the Board of Professional Medical Conduct ("BPMC"). See PHL §230.

124.    Neither the City defendants nor the State Defendants have any authority to take any type of an action such as the ones specified in this complaint against the Plaintiff and his unencumbered license to practice medicine without a formal proceeding and due process determinations under PHL Sec. PHL Sec. 230.

125.    Consequently any summary action taken and prospectively continuing to be taken by the city and state defendants  as set forth above, against the plaintiff and his unencumbered license and practice of medicine, which includes the vaccination of his pediatric patients and providing them with vaccination records is a violation of his Fourteenth Amendment due process rights.

126.    The prospective and continuous action taken by the state and city defendants against the Plaintiff also  amounts to an unreasonable unauthorized state interference with Plaintiff's Fifth and Fourteenth  Amendments rights to practice his vocation free of unreasonable state governmental interference.

**(C)    The procedural due process provisions of PHL
§ 12-a and PHL 230 are squarely applicable
to the facts of this case and to defendants' actions
<u>which violate Plaintiff's Fourteenth Amendment rights.</u>**

127.    The legislature provided three tiers of due process applicable in this case. Under the first tier,  in the event that the defendants contend that somehow the Plaintiff is violating PHL §2168 under any manner or form, the legislature unequivocally mandates that the Commissioner proceed with formal hearings and formal administrative determinations under PHL §12-a.

128.    The second tier of due process protections are the provisions of State Administrative Procedure Act ("SAPA"). Contested proceedings such as the ones anticipated by PHL §12-a are also covered by due process provisions of the State Administrative procedure Act Secs. 310 through 401.  In short, prior to taking any action such as the ones specified in this complaint with respect to the violation of any provision of the PHL, including PHL  §2168, the defendants have to afford the plaintiff the formal due process safeguards set by the legislature in PHL §12-a. No such formal process was followed here.

128.    To the extent that the defendants continue to take the action specified in this complaint against the Plaintiff based upon any contended violation of PHL §2168, first they had to follow the due process mandates of §12-a, which they failed to do in this case.

129.    Consequently, defendants' continuous and prospective  summary action taken against the Plaintiff  which continues unless enjoined and  revoked by the Court violates the

Fourteenth Amendment due process clause.

130.    The third tier of due process protections if provided by PHL Sec. 230. In the event that the state and/or city defendants allege that the Plaintiff violated any part of the disciplinary statute Education Law §6530, they are not authorized to take summary action against the Plaintiff such as the one described in this complaint without a formal adjudication of Plaintiff's status as a "vaccine fraudster" and a willful violator of PHL §2168. As set forth above the only manner in which any action can be taken against the Plaintiff which restricts his license and ability to practice medicine without restrictions is for the BPMC to afford the Plaintiff all the due process mandates of PHL §230.  That includes a formal hearing and an opportunity to be heard conducted in accordance with PHL §230 and SAPA §310 et.seq.

131.    Similarly, to the extent that the defendants contend that the Commissioner is entitled to take summary action against the Plaintiff of any type, such action is similarly protected by due process. See PHL §230. That due process entails notice and opportunity to be heard.

132.    No such formal due process was afforded to the Plaintiff and no formal adjudication was made by the BPMC that the Plaintiff is restricted from providing vaccinations and paper proof of vaccinations to his patients.

133.    To the extent that the defendants contend that the BPMC Order of 2007 EX D continues to provide grounds for them to take the present summary actions, it does not. The effect of the Order expired by its own terms in 2010 when the probation term was completed. Even if it did not expire at the end of the probation period, **the BPMC NEVER restricted** Plaintiff's license to exclude him from vaccinating his patients and providing paper proof of such vaccinations to the school districts. In fact, because the terms of the probation of the Order of 2007 did not include any bar on Plaintiff's for providing vaccination for his patients and because no restriction on

vaccination was set by the BPMC at any time after probation was completed and during the probation time, the Plaintiff vaccinated his patients and routinely provided paper proof of such vaccinations to the schools without any action or interference from the BPMC the OPMC. Therefore, the defendants have no grounds for acting summarily the way they continue to act in this case against the Plaintiff by restricting his plenary license to practice medicine and continuously depriving him of due process.

133.    Consequently, not only that the continuous summary action taken by the state and city defendants against the Plaintiff as specified in this complaint are without authority  but they prospectively violate due process.  No formal determination was made by the state agency of competent jurisdiction, in this case the BPMC, in accordance with PHL §230 that the Plaintiff is a vaccine fraudster and engaged in vaccine fraud or that he was suspended from the NYCIR at any time prior and during the summary action taken by administrative fiat against the Plaintiff by the state and city officials.

**(D)    An explanation of defendants' lack of authority and continuous
to take summery action against the Plaintiff and the
<u>continuous violation of Plaintiff's due process rights</u>.**

134.    PHL §2168 does not empower either one of the State of City Commissioners or any one of the defendants to take summary action against a physician's license and impose a limitation on such license by either denying, refusing to process an application for access  or revoking access to either NYCIR  or CIR.

135.     PHL §2168 does not empower staff of either ones of the commissioners to summarily black list a physician on their official web site as having been barred from providing vaccinations without a hearing and opportunity to be heard and without a quasi-judicial or judicial determination that the licensed physician did something wrong.

136.    PHL §2168 does nor empower any one of the Commissioners and their staff to use information from the NYCIR  or CIR for the purposes other than the ones specified in PHL §2168(8)(b)

137.    PHL §2168 does not empower either one of the defendants to vest themselves with authority and powers through the enactment of regulations  beyond those given to the administrative officials by the statute.

138.     PHL §2168 does not empower either one of the defendants to precondition participation in either the NYCIR  or the CIR programs upon a licensee's abandoning his/her due process rights to a hearing and opportunity to be heard and a formal determination regarding any allegations or investigations of allegations conducted by the Vaccine Complaint Unit of the DOH or any other state or City investigative agencies.

139.    PHL §2168 does not empower the state and city defendants to bypass all the due process requirements of the State Administrative procedure Act §301 et.seq. regarding contested administrative proceedings when it comes to enforcing allegations of violations of PHL §2168.

140.    PHL §2168 does not empower the state or city defendants  to bypass the notice and opportunity to be heard mandate of PHL §12-a in the event that the commissioner and/or his staff determine that a violation of PHL §2168 took place.

141.    PHL §2168 does not vest the commissioner with any powers to delegate the subpoena issuance powers of the commissioner to any investigator including the Director of DOH investigations.

142.    PHL §2168 does not provide either one of the defendants to vest themselves with powers to violate the unconstitutional condition doctrine  by forcing physicians hand healthcare practitioners to sign agreements and forms as a condition to the approval of their application for

access to NYCIR  and the CIR which utterly divest the licensees of their constitutional due process rights and their constitutional  rights to practice medicine without unreasonable state interference.

143.    PHL §2168 was meant to provide a centralized database for vaccinations of children in New York for the purposes specifically articulated in PHL §2168(1).

144.    PHL §2168 does not bar nor does it intend to supplant individual paper medical records of  pediatric patients substantiating a patient's vaccination records.

145.    PHL §2168 does not vest the defendants with authority to summarily issue orders to schools to reject medical paper records as proof of vaccinations.

146.    The legislature only granted one remedy to the administrative state defendant officials when and if they believe that a violation of  PHL §2168 occurred.

147.    Enforcement of a violation of the provisions of PHL §2168 is relegated exclusively to the Commissioner through the formal due process provisions of PHL §12-a. That statute does not empower the state defendants to act outside of the law through administrative fiat as described in this complaint.

148.    Defendants' continuous actions taken against the Plaintiff as specified in this complaint continue to and prospectively violate due process because the same were not and are not being taken in accordance with the formal due process requirements of PHL §12-a

> **(vi)    The defendants, state officials admitted that their official position is that the due process mandates of the Fourteenth Amendment do not apply to any of the formal  actions taken by the defendants <u>against the Plaintiff.</u>**

150.    In an existing similar but not identical case now pending sub judicia  in the Eastern District of New York before Judge Azrack, titled *Faiz Khan M.D. v. James McDonald M.D. et.al.* Case No. 2:24-cv-07475-JMA-ST, the defendants made the astounding admission that under their

procedures there is no pre or post deprivation remedy to their summary denial of access to either the NYCIR or the NYCIR and their summary directions to school districts to refuse Plaintiff's paper vaccination records and to their labeling the Plaintiff as a vaccine fraudster without any formal determination being made to that effect.

151.    The defendants also made the stunning admission of their violation of the unconstitutional condition doctrine  by actually producing specific documents which strip licensees such as the Plaintiff of all constitutional due process as a pre-condition to obtaining access to either NYCIR  or the CIR.

152.    Annexed hereto as EX I  is the affidavit of Vajeera Dorabawila, a NYS DOH official familiar with the documentation the state and city defendants force healthcare partitioners to sign as a condition to be approved for access to the NYCIR  and exhibits annexed thereto.

153.    As it can be seen from the same the state defendants and from defendants' own affidavit,  they pre condition access to the NYSIIS and NYCIR  upon the execution of the attached forms.  Those forms  outright force a licensee to abandon his/her due process rights to a notice and opportunity to be heard and vest the state officials and investigators to take summary action without any notice and opportunity to be heard being given to the healthcare practitioner.

154.    It is also state defendants' formal position that when it comes to smearing Plaintiff's name and placing him on the branding list which falsely accuses the Plaintiff of being a vaccine fraudster and when it comes from forbidding the Plaintiff from submitting paper proof of vaccinations to school districts and further directing the schools on a public website not to obtain any vaccination records form the plaintiff while falsely stating that the Plaintiff was suspended from NYCIR, the Plaintiff has no due process rights. See Ex J annexed hereto at pp. 13-15 - memorandum submitted by the state defendants in Khan v. McDonald, *Faiz Khan M.D. v. James*

*McDonald M.D. et.al.* Case No. 2:24-cv-07475-JMA-ST.

156.    In fact the defendant's official position in cases involving identical issues as the ones here is as follows; (1)  the Plaintiff is not entitled to any  due process; (2)  he does not have any right to have access to NYSIIS or in this case NYCIR  in the practice of medicine; (3)  that he does not have a property right in his medical license which cannot be restricted without due process; (4)  and that pretty much they can do anything to the plaintiff under the form of formal state action without due process, namely: (i)  summarily declare him as a vaccine fraudster and (ii) summarily directing school districts to reject Plaintiff's paper records  without any recourse while (iii) at the same time misrepresenting to the public  that the Plaintiff was suspended from NYCIR, when in fact the Plaintiffs simply ignored his application and cut contact with him. See memorandum  Ex J hereto at pp.  13-14. They erroneously state that in order to be entitled to relief the Plaintiff has to make some showing of an economic damage and prove how the NYCIR  access restriction affects his practice economically. No authority supports this preposterous proposition .

157.    For starters the Plaintiff does have an unfettered and mandatory right to have access to NYCIR in order to be able to practice medicine without restrictions and in order to have an unrestricted medical license.

158.    The reason why he has such unfettered right is because the legislature gave it to him. See PHL Sec 6128(8)(c). "[H]ealth care providers and their designees, registered professional nurses, and pharmacists authorized to administer immunizations pursuant to subdivision two of section sixty-eight hundred one of the education law **shall have access to the statewide immunization information system** for purposes of **submission of information about vaccinations received by a specific registrant,** determination of the immunization status of a specific registrant....review of practice coverage, generation of reminder notices, quality

improvement and accountability, including professional responsibility proceedings of the office of professional medical conduct and the state education department, **and printing a copy of the immunization**...record for the registrant's medical record, for the registrant's parent or guardian, or other person in parental or custodial relation to a child, or for a registrant upon reaching eighteen years of age.

159. Access to the NYCIR is mandatory for the practice of medicine without a license restriction because PHL §6128(3)(a)(i) provides that "(i) Any health care provider who administers any vaccine to a person less than nineteen years of age or, on or after September first, two thousand nine.... and immunizations received by a person less than nineteen years of age in the past if not already reported, **shall report all such immunizations and the results of any blood lead analysis to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations or of obtaining the results of any such blood lead analysis.**

160. Dr. Nesselson is a "health care provider" within the definitions of §2168(2) which encompasses "any person authorized by law to order an immunization ...with respect to a person seeking or receiving a health care service from the health care provider".

161. Insofar as defendants' contend that that Dr. Nesselson " has neither a property nor a liberty interest in such access and had no right to due process before his access was suspended", that statement is wrong on three counts: (a) The property and liberty right and interest attaches to Plaintiff's unrestricted medical license which enables Dr. Nesselson to provide vaccination services for his patients as defined by PHL §2168(2); (b) the legislature provides for due process in PHL §12-a in connection with any mandates and rights provided statutorily in PHL §2168 as discussed above, due process right attaches to the deprivation of such rights by state officials; (c) defendants' summary actions described in this complaint amount to a de facto license restriction. Such penalty can only be imposed by the Board of Professional medical Conduct pursuant to PHL

Sec. 230-a(3) only after a full array of due process steps provided by both PHL Sec. 230 and SAPA Sec. 301 et.seq are complied with.

162. For all of the foregoing reasons the defendants' affirmative actions as well as their deliberate failure to act with respect to Plaintiff's NYCIR application  violate due process as the same actions were not taken in accordance with PHL §12-a. The same summary actions taken defendants against the plaintiff by administrative fiat as well as their failure to act by the were taken further amount to due process violations because they were not taken after any determination of professional misconduct made by the BPMC against the plaintiff pursuant to PHL Sec. 230, SAPA Sec. 301et.seq and/re PHL Sec. 230-a(3).

163. Moreover, the administrative posting on the defendants' official web site equating the Plaintiff with vaccine fraud in the absence of the conduct of formal proceedings and findings as mandated by PHL §12-a continues to violate due process because no such formal determinations were ever made.

164. To the extent that the defendants contend that the BPMC Order of 2007 EX D hereto constitutes the ground for the posting and for defendants' present actions in 2024, the same argument fails as a matter of law.

165. The 2007 Order EX D hereto DID NOT impose any type of a bar on either Plaintiff's administration of vaccines to his patients  or on his ability to provide his patients with vaccine records since the inception of the Order. Since the 2007 BPMC order through November 2024, the Plaintiff provided vaccination services to all of his patients and provided records to schools without any license restriction, which is now summarily imposed upon the Plaintiff by administrative fiat and without due process.

166. The continuous restriction imposed by the defendants on plaintiff's license through the denial of the NYCIR  access without notice and opportunity to be heard and without affording the plaintiff the full array of due process protections of PHL §12-a or PHL §230 is therefore a continuous and prospective due process violation.

167.    Even if assuming arguendo that a medical license is not entitled to due process protections and to the formal due process afforded by the PHL under §230, any perceived violation of PHL §2168 by the Plaintiff must be subject to formal due process including the filing of formal charges, notice of charges, opportunity to respond and formal opportunity to be heard during an adjudicative hearing by an impartial adjudicator. New York legislature encompassed this due process right in PHL Sec 12-2. Holding up access to NYCIR  without that due process in perpetuity is a live and continuously violation of the Fourteenth Amendment which constitutes a true injury within the analysis of Article III standing.

168.    State investigators' and the Commissioner's self-crowning themselves with powers to bypass the US Constitutional due process under the fourteenth amendment is not something that the legislature contemplated when it enacted either PHL §6128 (which establishes NYCIR ) or PHL §12-a mandating that due process and formal hearings be held where statutory violations are found to exist.

**(vii)    <u>The administrative subpoena violates the Fourth Amendment</u>.**

169.    The Subpoena EX B hereto violates the Fourth Amendment for several reasons as discussed below:

(a)    It is issued by an investigator who has no powers to issue subpoenas without violating the Fourth Amendment;

 (b)    The subpoena is not authorized by statute because it purports to seek documents related to diagnosis and treatment of patients which the defendants have no authority to collect;

(c)    The subpoena is broad and indefinite;

(d)    The subpoena seeks documents which are irrelevant to Plaintiff's vaccination practices;

(e)    The subpoena seeks materials and documents which can only be sought by the New York Board of Professional Medical Conduct under PHL §230(10)(k);

(g)    The subpoena violates the time limitation provided by the legislature for response to the same (30 days from receipt of communication form the department of health) by arbitrarily shortening the response time from 30 days to 14 days at the discretion and pleasure of an investigator without authority to shorten such statutory response time.

170.    The foregoing Fourth Amendment constitutional objections were not timely raised by Plaintiff's former counsel who opted to advise and assist  the Plaintiff to make an indiscriminate mass production of records without challenging the constitutionality of the subpoena. That production stopped once current counsel took over the case.

171.    However, the Plaintiff did not waive his Fourth Amendment rights to object to the subpoena. The law is clear with respect to the validity of a Fourth Amendment waiver and it specifies several elements which must be satisfied: (a) the waiver had to be intentional and voluntary and not obtained through defendant's false pretense and coercion and has to be "the product of a free and deliberate choice rather than intimidation, coercion, or deception. That is not the case here.; (b) In addition, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. This is not the case here because the Plaintiff was never advised of his Fourth Amendment right to challenge the subpoena; (c) The "courts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights.". ; (d)  Courts are not limited to a fixed list of factors they may consider in determining whether a waiver is voluntary, knowing and intelligent; (e) where the waiver is made pursuant to advice of counsel, the Plaintiff may attack such waiver based upon ineffective advice of counsel and that by showing that the advice he received from counsel was not within the standards set forth by federal jurisprudence.

172.    The question to be answered in such cases is  not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in handling quasi criminal administrative subpoenas from state officials which violate the Fourth Amendment.

173.    In this case that advice of former counsel fell short of the range of competence demanding of attorneys handling open ended administrative subpoenas which violate the Fourth Amendment for the following elementary reasons: (a) to be valid under the Fourth Amendment a subpoena cannot be signed by an investigator. The subpoena in this case, EX B hereto is signed by an investigator, namely Mr. Giovanetti. The reasoning behind this requirement is simple. Like there is a buffer between an investigating government agent and the target of the investigation in a search and seizure setting and a warrant is issued by a disinterested magistrate or judge, so does an administrative subpoena have to provide the equivalent Fourth Amendment protection and be executed by a disinterested party or individual within the same agency. In this case it would be an individual supervising Director Giovanetti's actions, namely the commissioner ; (b) to be valid under the Fourth Amendment the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The subpoena issued in this case does not satisfy the minimum Fourth Amendment requirements because: (a) it is not limited in scope and it demands an indefinite and infinite amount of documents without delineating the same specifically. Because of that through this date the Plaintiff was burdened with producing hundreds of medical records without any end to the production; (b) the subpoena demands the production of general medical records which have no relevancy to vaccinations; (c) the subpoena is not authorized by statute because no statute empowers the Director of Investigations to issues subpoenas or the Commissioner to delegate the subpoena issuing powers

to the investigative director. Such delegation is a flagrant violation of Plaintiff's Fourth Amendment rights. In addition, the defendants do not have any statutory authority to seek confidential medical information which is unrelated to vaccinations. at is reserved for the BPMC whose subpoena making powers are specified in PHL Sec. 230(10)(k).

## AS AND FOR A FIRST CAUSE OF ACTION –
## MANDATORY TEMPORARY INJUNCTION
## PURSUANT TO FED. R. CIV. P. 65.

174.    Pursuant to Fed. R. Civ P. 65 the Plaintiff requests the issuance of a mandatory temporary injunction mandating that the defendants immediately grant Plaintiff's access to NYCIR because the defendants' administrative lock out of the Plaintiff from the NYCIR through  their deliberate failure to act on his application and subsequently through their summary actions taken by administrative fiat without affording the Plaintiff any due process under PHL §230 or PHL §12-aamounts to a de facto license restriction taken without authority and it further amounts to continuous violations of Plaintiff's  Fourteenth Amendment due process rights. Defendants' summary denial of Plaintiff's access to NYCIR without due process amounts to a further violation of Plaintiff's constitutionally protected Fifth and Fourteenth Amendment rights to practice his profession without unreasonable government interference.

175.    Pursuant to Fed. R. Civ P. 65 the Plaintiff requests the issuance of a mandatory temporary injunction mandating that the defendants immediately remove any reference to his name form the branding list maintained by the defendants at https://health.ny.gov/prevention/immunization/schools/fraud.htm EX A hereto, together with any directives given to New York schools that they must reject paper documentation of vaccinations provided by the Plaintiff to his pediatric patients.

176.    Such summary action taken by administrative fiat amounts to a de facto license restriction which the defendants have no authority to impose and to a deprivation of Plaintiff' due process rights safeguarded by the Fourteenth Amendment for all of the reasons articulated above.

177.    Moreover, the defendants cannot act against the Plaintiff and impose any restrictions with respect to any issue related to their purported enforcement of any provision of the Public Health Law without affording the Plaintiff the procedural due process as mandated by PHL § 12-a as discussed above. Such actions amount to a deprivation of Plaintiff's constitutionally protected rights under both the First and the Fourteenth Amendments of the US Constitution.

### (i)    In general – standard for issuance of mandatory injunction .

178.    Courts in the Second Circuit refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it. A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.

179.    Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing "a clear or substantial likelihood of success on the merits.".

### (iii)    Irreparable harm – violation of constitutional rights.

180.    Federal courts in this jurisdiction defined and addressed the existence of the element of irreparable harm where violation of constitutional rights is alleged. An alleged prospective violation of a constitutional right "triggers a finding of irreparable harm" in the context of injunctive relief.

181.    A  party applying for a preliminary injunction satisfies the requirement to show irreparable harm by alleging violations of constitutional rights. A court will presume that a movant has established irreparable harm in the absence of injunctive relief if the movant's claim involves the alleged deprivation of a constitutional right. When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.

182.    Moreover, courts can only enjoin existing and prospective violations of constitutional rights occasioned by the actions of state actors and officials. Past constitutional violations are not actionable through injunctive relief.

183.    The alleged present or prospective violation of a constitutional right triggers a finding of irreparable injury. Because violations of constitutional rights are presumed irreparable, the very nature of such allegations" satisfies the requirement that it show irreparable injury.

184.    For all of the reasons articulated hereinabove, with respect to all of the actions of the defendants which are the subject matter of this litigation,  as stated in this complaint, the Plaintiff has shown and present and prospective constitutional violation of his rights under the Fifth and Fourteenth Amendment of the U.S. Constitution exist which necessitate the issuance of both a mandatory preliminary injunction and a prohibitive temporary injunction as set forth below.

185.    Defendants' continuous and prospective de facto license restriction imposed on the Plaintiff's medical license  through their deliberate inaction and obstruction of Plaintiff's access to the NYCIR as set forth in this complaint without affording the Plaintiff the procedural due process protections specified in PHL § 12-a amounts to a constitutional due process violation of plaintiff's Fourteenth Amendment due process rights.

186.    Medical license restriction is a formal penalty of professional medical misconduct which is  imposed pursuant to PHL §230-a(3) by the sole state agency vested with powers to

conduct disciplinary proceedings and impose such penalty, namely the BPMC. See PHL Sec. 230. Such action can only be taken after the full array of due process protections mandated by PHL §230 are afforded to the Plaintiff. The defendants are not authorized to impose license restrictions upon the Plaintiff under any provisions of New York Law. The BPMC neither conducted disciplinary proceedings pursuant to PHL §230 nor ever imposed a license restriction on Plaintiff's licenses which prohibit him from vaccinating patients and submitting paper records of vaccinations to school districts to document his patient's vaccinations. See EX D and E hereto.

187.    Defendants' present and prospective indefinite unauthorized imposition of a license restriction on Plaintiff's medical licenses by administrative fiat continues unabated and  without due process. The defendants continue to act  extra judicially  by restricting the Plaintiff from access to the NYCIR and by issuing unauthorized directives to school districts through its outright unauthorized illegal and unconstitutional branding public web site (EX A) to reject paper records of such vaccinations from the Plaintiff.

188.    The defendants  are also  barring the plaintiff presently and prospectively from providing vaccines through their unconstitutional postings on the branding site of statements and directives given to school districts regarding the rejection of Plaintiff's paper documentation of vaccinations of his pediatric patients. Such actions  prospectively violate Plaintiff's due process rights as set forth above in this complaint.

189.    Defendants' existing postings on the branding site EX A hereto of the fabricated information regarding the Plaintiff and the directives given to school districts to reject paper documentation of Plaintiff's vaccination record of his pediatric patients prospectively violate Plaintiff's constitutionally protected due process rights for all of the reasons articulated above in this complaint.

190.    In addition, all of defendants' present and prospective actions which are subject to this litigation and discussed hereinabove amount to an unreasonable state governmental interference with plaintiff's right to practice his professions free of such interference. Consequently, defendant's actions violate Plaintiff's Fifth and Fourteenth Amendment right to practice his profession free of unreasonable government interference.

191.    Finally, the defendants continue to violate Plaintiff's Fourth Amendment rights by insisting and demanding compliance with the subpoena which violates the Fourth Amendment on many levels as set forth in paragraphs 186-188 hereinabove.

192.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of his Fourth, Fourteenth and Fifth Amendment rights exist as long as the defendants restrict his right to access the NYCIR and therefore they are imposing a license restriction without due process while interfering with his right to practice the profession of nursing without having an unauthorized license restriction issued in an unauthorized manner by administrative fiat and without due process.

193.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of his Fourteenth and Fifth Amendment rights exist as long as the defendants continue in full force and effect the posting on their branding website EX A hereto, which hold the plaintiff out as a vaccine fraudster without any formal protections of due process imposed by the Fourteenth Amendment and by PHL § 12-a and without any determination made by the BPMC that the Plaintiff engaged ever in such unprofessional conduct as defined by Educ. Law § 6530.

194.    For all of the foregoing reasons, the Plaintiff has shown that a continued violation of his Fourteenth and Fifth Amendment rights exist as long as the defendants continue in full force and effect the posting on their branding website, EX A hereto, which directs school districts to

reject paper medical records from the Plaintiff evidencing the vaccination of his pediatric patients and which holds out the Plaintiff as a vaccine fraudster without the existence of any formal adjudication of any kind of such branding status.

195.    For all of the above referenced reasons as long as the defendants still hold in place the unconstitutional administrative subpoena EX B hereto issued on July 22, 2024 and continue to demand production of an indefinite and undefined number and type of medical records pursuant to the same subpoena the Plaintiff has shown that his Fourth Amendment rights continue to be violated.

**(iv)    The Plaintiff has shown a strong likelihood of success on the merits to warrant the issuance of a mandatory preliminary injunction.**

196.    As set forth above, the Plaintiff has made a strong showing of likelihood of success on the merits regarding application for a mandatory injunction.

197.    Specifically, Plaintiff  has shown that the defendants imposed a de facto license restriction upon his medical license without authority and without any due process by using administrative fiat and blocking his access to NYCIR.

198.    A restriction of access to the NYCIR through defendants' failure to act has the net effect of imposing a license restriction pursuant to PHL §230-a(3) upon Plaintiff's license to practice medicine. Only the BPMC can impose such license restriction, and only after it affords the plaintiff the array of procedural due process steps provided by PHL §230 and SAPA §§ 301–401.

199.    In addition to having no authority to impose license restrictions on Plaintiff's nursing licenses, the defendants herein are knowingly and willfully continuing to violate Plaintiff's due process rights by maintaining such restriction without an order from the BPMC and without

affording the Plaintiff his due process rights to notice and opportunity to be heard at a meaningful time and in a meaningful manner pursuant to PHL §12-a. Such conduct clearly violates the Fourteenth Amendment.

200.    Even the relevant statute which governs the limited powers of the Defendants to act with respect to any violations of PHL § 2168 and 10 NYCRR §66-1.2 (none were ever identified or specified by the Defendants in this case) mandates that in case that such a violation occurs, notice an opportunity to be heard through formal hearings have to be given to the Plaintiff before any action is taken against him by the Commissioner. See PHL §. 12-a.

201.    No such procedure as specified in PHL § 12-a has ever been followed in this case. The reason could be simple, the Defendant investigator and the Bureau of immunizations simply do not have authority to restrict Plaintiff's license by administrative fiat.

202.    In addition, the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment.

203.    The due process clause of the Fifth and Fourteenth Amendment provides people with a constitutional "right to pursue an occupation" free of unreasonable government interference.

204.    Defendants' prospective use of administrative fiat to deny Plaintiff's right to access NYCIR, which in turn amounts to a de facto license restriction is an unreasonable government interference which continues to violate Plaintiff's Fifth and Fourteenth Amendment rights.

205.    Moreover, the mere existence of the subpoena accompanied by defendants' demands that the plaintiff comply with the unconstitutional demands made in the subpoena and with the unconstitutional form of the subpoena as discussed above prospectively violate the Fourth Amendment.

206. For all of the foregoing reasons the Plaintiff has made a strong showing of a likelihood of success on the merits of his application for a mandatory injunction against the defendants directing them to grant him access to the NYCIR.

207. Moreover, the Plaintiff has made a strong showing of likelihood of success on the merits regarding his request for the issuance of a mandatory injunction directing the defendants to remove Plaintiff's name from the branding list EX A thereto and further directing the defendants to instruct school districts to accept Plaintiff's paper vaccination records based on claims for prospective violations of the Fifth and Fourteenth Amendment as set forth above.

**(v)    Balance of equities and public interest militate in favor of the issuance of a mandatory preliminary injunction.**

208. The balance of equities and public interest favor a preliminary injunction here because there is a public interest in avoiding violations of constitutional rights. The government does not have any legitimate interest on acting unconstitutionally.

209. In addition under the facts of this case, the defendants' scheme to bypass due process and involve the unauthorized branding web site as a de facto proclamation of state official action while completely evading due process and judicial scrutiny became a threat to the public health and safety of the children in this state for the reasons articulated above in this pleading

210. For all of the foregoing reasons the Plaintiff requests that a mandatory preliminary injunction issue in the form and substance set forth above: (a) directing the defendants to affirmatively and immediately grant Plaintiff's access to NYCIR; (b) directing the defendants to remove from their branding web site EX A hereto any reference to Plaintiff's name and information; (c) directing the defendants to remove from their branding web site EX A hereto any and all directives given to school districts to reject Plaintiff's paper medical records as proof of

vaccination; (d) directing the defendants to affirmatively inform in writing all school districts in New York state that the posting on the branding site EX A hereto regarding the Plaintiff and the directives given there was without authority and that schools must accept form the Plaintiff any and all forms of proof of vaccination designated by the defendants in EX A including paper medical records.

### AS AND FOR A SECOND CAUSE OF ACTION – PROHIBITIVE PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. PROC. 65.

211.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if the same was set forth at length herein.

212.    The Plaintiff is seeking the issuance of a prohibitive preliminary injunction, preliminarily enjoining the defendants, their servants, agents and assigns from prospectively continuing to do any of the following acts: (a) continue to deny the Plaintiff access to NYCIR by failing and refusing to process his application, and continue to impose a de facto license restriction on Plaintiff's medical license in violation of his Fifth and Fourteenth Amendment rights as set forth above; (b) continuously maintaining the posting on the branding web site EX A hereto which falsely accuses the Plaintiff of committing vaccine fraud and which directs school districts to reject Plaintiff' documentation as proof of vaccines given to his patients. The foregoing conduct is  in violation of Plaintiff's Fifth and Fourteenth Amendment rights a set forth above; (c) continue to pursue the unconstitutional subpoena and demand Plaintiff's compliance with the same based upon the fact that such conduct amounts to a prospective violation of Plaintiff'' Fourth Amendment rights.

### (i)    Showing of the element of irreparable harm – violation of constitutional rights.

213.    In support of this application the Plaintiff has shown the existence of irreparable

harm caused by defendants' continuous and prospective violation of Plaintiff's constitutional Fifth and Fourteenth Amendment rights.

214.    The Plaintiff has shown that the defendants are violating and continue to violate his Fifth and Fourteenth Amendment rights by: (a)  continuously restricting his medical licenses by administrative fiat, extra judicially and without due process; (b) continuously restricting his access to NYCIR  by administrative fiat, extra judicially and without due process; (c) continuously maintaining the post on the branding site EX A hereto, branding the Plaintiff as a vaccine fraudster without any forma determination having been made by anyone that the Plaintiff engages in such criminal and unprofessional conduct by any court of competent jurisdiction or by the BPMC; (d) continuously maintaining the posting on the branding web site EX A hereto which directs school districts to reject plaintiff's paper vaccination records while the defendants are unconstitutionally restricting his access to NYCIR; .

**(ii)    A showing of likelihood of success on the merits has been made.**

215.    To establish a likelihood of success on the merits, 'prima facie showing of a reasonable probability of success is sufficient; actual proof of the Plaintiff's claims should be left to a full hearing on the merits.'" A likelihood of success on the merits may be sufficiently established even where the facts are in dispute and the evidence need not be conclusive."

216.    In the present case the Plaintiff established likelihood of success on the merits because she has shown that Defendants continue to violate his Fifth Amendment  and Fourteenth Amendment rights as specifically articulated above in this Complaint.

**(iii)    Balance of equities and public interest.**

217.    The balance of equities and public interest favor a prohibitive preliminary injunction here because there is a public interest in avoiding violations of constitutional rights. For

the foregoing reasons the injunction is in the public interest because defendants' unconstitutional conduct became a threat to the health and safety of the children of this state.

218.    For all of the reasons set forth hereinabove the Plaintiff has shown that in the absence of a preliminary prohibitive injunction in the form and substance articulated in paragraphs above in this complaint, the Defendants will continue to violate his  constitutionally protected rights safeguarded by the Fourth, Fifth and Fourteenth  Amendment of the U.S. Constitution.

### AS AND FOR A THIRD CAUSE OF ACTION – INJUNCTION PURSUANT TO 42 U.S.C. §1983.

219.    Plaintiff repeats realleges and reiterates each and every allegation set forth above with the same force and effect as if the same were set forth at length herein.

220.    Plaintiff is seeking a permanent injunction pursuant to 42 U.S.C. § 1983 enjoining the Defendants, their agents' servant and assigns from doing or causing to do the following:

(a)    Continuing to deny the Plaintiff access to NYCIR on the grounds that  such denial amounts to the continuation of immediate and continuous irreparable harm caused by the defendants to the Plaintiff in the form of violation of due process rights safeguarded by the Fourteenth Amendment of the US Constitution, and N.Y. Pub. Health Law § 12-a and State administrative Procedure Act ("SAPA") §301 through §401.  The denial of access to NYCIR continues to be imposed by administrative fiat without Notice and Opportunity to be heard and without affording the Plaintiff the due process rights safeguarded by the Fourteenth Amendment of the US Constitution and by PHL § 12-a.

(b)    Defendants' continued denial of Plaintiff's access to NYCIR amounts to the continuation of immediate and continuous irreparable harm caused by the defendants to the

Plaintiff in the form of violation of Plaintiff's Fifth and Fourteenth Amendment rights to practice his profession without unreasonable government interference for all of the reasons articulated hereinabove. The purported suspension was imposed by administrative fiat without Notice and Opportunity to be heard and without affording the Plaintiff the due process rights safeguarded by the Fourteenth Amendment of the US Constitution and by Pub. Health Law § 12-a.

(c)    Permanently enjoining the defendants from continuously and prospectively maintaining the posting regarding the plaintiff on the branding site EX A hereto on the grounds that the same posting amounts to an unauthorized and unconstitutional continuous violation of Plaintiff's Fifth and Fourteenth Amendment rights for all of the reasons articulated hereinabove.

(d)    Permanently enjoining the defendants from demanding compliance with the unconstitutional subpoena and from attempting in any way to enforce the same based upon the grounds that such conduct is a continued violation of Plaintiff's Fourth Amendment rights as discussed above in this complaint.

221.    To  state a cause of action under 42 USC §1983 the Plaintiff must allege  that some state official acting under color of state law deprived him of a federal right. Furthermore, to state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. The requirement that the defendant acted under 'color of state law is jurisdictional. Section 1983 itself creates no substantive rights; it provides  only a procedure for redress for the deprivation of rights established elsewhere.

222.    In this case the Plaintiff alleges that the state and city actors, namely the defendants herein are prospectively and continuously depriving the Plaintiff   Fifth and   Fourteenth

Amendment rights for all of the reasons articulate above in this complaint. Defendants' conduct amounts to a dual deprivation and violation of Plaintiff's due process rights and of his constitutionally protected due process rights to practice his profession without unreasonable government interference.

223.    In order to receive injunctive relief under 42 USC §1983, there must be the possibility and threat of prospective violation of constitutionally protective rights. In this case as set forth above the Plaintiff is seeking prospective injunctive relief against the state's and city's actors for all of the reasons articulated above.

224.    It is defendants' continuous prospective actions in blocking Plaintiff's access to NYCIR and the prospective maintaining of the unauthorized false posting on the official branding site maintained by the state officials (EX A) as well as the continuous postings on the branding web site - EX A hereto coupled with the directives given to school districts to reject Plaintiff's paper medical records supporting vaccination of his patients which continue to violate Plaintiff's Fifth and Fourteenth Amendment constitutional rights.

225.    In addition, the Plaintiff has shown that she is likely to succeed on the merits of his underlying claim for injunctive relief pursuant to 42 USC §1983 for the same reasons articulated in connection with his application for preliminary injunctive relief set forth above in this complaint.

226.    In order to state a claim under §1983, a Plaintiff must also allege the violation of a right preserved by another federal law or by the Constitution. That is exactly what the Plaintiff has done in this case. He alleged violation of his constitutionally protected rights of due process under the Fourteenth Amendment of the Constitution to be free from actions of license restriction and to

be free from unreasonable governmental interference with his practice of medicine in violation of his Fifth and Fourteenth Amendment rights.

227.    To establish liability under 42 U.S.C. § 1983, a Plaintiff must prove two essential elements: (1) that the Defendants acted under color of state law and (2) that the Plaintiff suffered a deprivation of a constitutional right as a result of that action.

228.    In this case the Plaintiff has shown that the Defendants have acted and continue to act under the color of New York Law, namely under the guise of enforcing the integrity of NYCIS under PHL §2168. However, they failed to act pursuant to PHL § 12-a and instead they acted and continue to act unconstitutionally by administrative fiat.

229.    Consequently, the Plaintiff will be successful on his claims for a permanent injunction pursuant to 42 U.S.C. § 1983 seeking to prevent further violation of Fifth and Fourteenth Amendment rights though the use of the New York investigative process employed by the investigators of the department of Health.

230.    For all of the above referenced reasons, the Plaintiff is seeking injunctive relief pursuant to 42 USC §1983 against the Defendants in the form and substance set forth herein.

### AS AND FOR A FOURTH CAUSE OF ACTION – DECLARATORY JUDGMENT UNDER 28 USC Sec 2201 et.seq.

231.    Plaintiff repeats reiterates and realleges each and every allegation set forth herein with the same force and effect as if the same are set forth at length herein.

232.    Plaintiff is seeking a prospective declaratory judgment against the Defendants for violation of constitutional rights as follows:

233.    Plaintiff is seeking a declaratory judgment against the defendants pursuant to 28 USC §2201 as follows: (a) declaring defendants' continuous summary action taken against the Plaintiff in restricting his access to NYCIR without due process being afforded pursuant to PHL

§12-a and pursuant to the Fourteenth Amendment of the US Constitution, as an unauthorized  de facto license restriction and an action which violates Plaintiff's Fourteenth Amendment due process right and his Fifth and Fourteenth Amendment right to practice his profession without unreasonable government interference; (b) declaring defendants' continued actions in maintaining the posting on the branding site EX A hereto without affording the Plaintiff any due process and without any formal hearing and determination that she is a vaccine fraudster and engaged in professional misconduct under Education. Law §6530  as deliberately misrepresented on the branding site.  as an act which the defendants are not authorized to take under any provision of New York law and as an act which is violative of Plaintiff's constitutionally protected due process rights under the Fourteenth Amendment and of his constitutional right to practice the nursing profession without government interference safeguarded by the Fifth and Fourteenth Amendment of the US Constitution; (c) declaring defendants' continued directives given to school officials on the branding site and in writing to reject Plaintiff's signed paper records evidencing vaccinations as an act taken without authority, as an act which amounts to a de facto license restriction without affording the Plaintiff any due process and as an act which continues to violate plaintiff's due process rights safeguarded by the Fourteenth Amendment and as an act which further violates Plaintiff's right to practice his profession without unreasonable governmental interference safeguarded by the Fifth an Fourteenth Amendments; (d) declaring the administrative subpoena issued to the Plaintiff EX B hereto as facially unconstitutional and as violative of Plaintiff's Fourth Amendment rights; (e) declaring Health Law §206(4)(a) and Public Health Law §12-a(1) unconstitutional as applied by the Defendants and as violative of the Fourth Amendment for the purposes vesting the investigators of the NYS DOH with powers to issue subpoenas which they simply cannot and do not have without violating the Fourth Amendment.

234.    The declaratory relief sought in connection with defendants' conduct specified in subparagraphs (a) through (c) above is supported by the totality of the allegations of this complaint which for the sake of brevity are incorporated herein by reference. The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.

235.    Moreover, a declaratory judgment is the proper procedural vehicle by which the Plaintiff can challenge the constitutionality of a statute. Justiciable controversies exist as set forth below.

**(i)    Both PHL §206(4)(a) and PHL §12-a(1)
        are unconstitutionally as applied and violative
        of the Fourth Amendment.**

236.    Defendants invoke both PHL §206(4)(a) and PHL §12-a(1) as the source of the investigators' authority to issue the subpoena attached hereto as EX B.

237.    The Plaintiff seeks a declaratory judgment pursuant to 28 USC §2201 et.seq. declaring both statutes as applied unconstitutional. In an as-applied challenge, the Court must analyze "the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right. In the context of an as-applied vagueness challenge, a court's analysis should be confined to the litigant's actual conduct, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute.

238.    To be compliant with the Fourth Amendment the subpoena cannot be issued or enforced by a government investigator. The discretion to enter a premises and inspect and seek information cannot be left to the unfettered discretion of the investigator through the issuance of the subpoena. To be valid under the Fourth Amendment the agency must have designated officials

and a specific process for the issuance of the subpoena which eviscerates and reviews the discretion of the investigators to enter and inspect as well as the inspector's request for the issuance of a subpoena. The process is very much like obtaining a search warrant from a magistrate or a judge but instead the magistrate and the judge are replaced by overseeing state officials.

239.    For example, in the case of physician discipline only the executive director of the Board of Professional Medical Conduct has the authority to issue a subpoena and that only after consultation with members of the Board of Professional Medical Conduct and the consent of such committee to the issuance of a subpoena. See for example PHL §230(10)(k).

240.    PHL §206(4)(a) vests only the Commissioner with powers to issue subpoenas in aid of hearings and investigations. The statute does not vest the investigator defendant Giovanetti with powers to morph himself into the Commissioner's position and use the same empowering statue authorizing the issuance of subpoenas by the Commissioner to anoint themselves with subpoena issuing powers.  Similarly, the Commissioner cannot delegate the subpoena making powers to the investigators under §206(4)(a) because no such delegations powers were given to him by the legislature under this statute.

241.    Therefore, Defendants' invocation of PHL §206(4)(a) as an authority for the issuance of the subpoena by state investigators is as applied unconstitutional.

242.    Similarly, PHL §12-a(1) states that: The commissioner, or any person designated by him for this purpose, may issue subpoenas and administer oaths in connection with any hearing or investigation under or pursuant to this chapter, and it shall be the duty of the commissioner and any persons designated by him for such purpose to issue subpoenas at the request of and upon behalf of the Defendant.

243.    PHL §12-a(1) does not however vest the Commissioner with powers to override the Fourth Amendment and delegate the powers to issue subpoenas to DOH investigators. That is just how the Defendants apply the statute to the facts of this case to vest the investigators with powers which they do not have. Most importantly PHL §12-a(1) does not specifically state that the Commissioner's powers to issue subpoenas can be delegated to state investigators. The term "any person designated by him for this purpose" does not include and cannot include investigators which are barred from issuing subpoenas under the Fourth Amendment as set forth by US Supreme Court Jurisprudence. The reason for that is simple. There must be some impartial party between the investigative authorities and the target of the subpoena who can decide is a subpoena allowing the officer to enter and inspect the premises should be issued. The analogy is similar to the "probable cause" analogy used by the courts to issue warrants.

244.    For all of the above referenced reasons the Plaintiff is seeking a declaratory judgment pursuant to 28 USC §2201 et.seq. declaring PHL §12-a(1) and PHL §206(4)(a) unconstitutional as applied.

**(ii)     The subpoena violates the Fourth Amendment.**

245.    The subpoena EX B hereto violates the Fourth amendment for all of the reasons articulated above.

246.    Specifically, the subpoena was issued by investigators in violation of the Fourth Amendment.

247.    The subpoena is oppressive, harassing and indefinite and it seeks documents which are outside the scope of any legitimate investigation which the Defendants investigators have the powers to conduct. That includes the demand in item #2 which by enlarge has no relevancy to

immunizations and it amounts to a wild and aimless fishing expedition and inquiry into Plaintiff's general practice of medicine in hopes of finding violation of the law.

248.    The subpoena is nothing more or less than a prohibited  unfettered inquiry into Plaintiff's general business practices conducted by the Defendants for in hopes of finding violations of the law.

249.    The subpoena is seeking records which are beyond the scope of the investigation. and beyond Defendants' authority to demand the same.

250.    For all of the foregoing reasons and for all of the reasons articulated above in this Complaint the Plaintiff is seeking a declaratory judgment pursuant to 22 USC §2201 et.seq. declaring the subpoena illegal and unconstitutional.

251.    For all of the above referenced reasons the Plaintiff requests that his application for a declaratory judgment pursuant to 28 USC §1983. declaring Defendants' conduct in denying the Plaintiff access to NYCIR by administrative fiat and without any formal due process proceeding governed by PHL §230 and SAPA 301 through 401 as conduct whish prospectively violates Plaintiff's Fifth and Fourteenth Amendment rights.

WHEREFORE the Plaintiff requests that the relief sought in this Complaint be granted in its entirety in the form and substance set forth in the First through Fourth  Causes of Action.

Dated: May 12, 2025

Attorney for the Plaintiff
JACQUES G. SIMON ATTORNEY
AT LAW P.C.
*/s/ Jacques G. Simon*
Jacques G. Simon, Esq.,
200 Garden City Plaza Suite 301
Garden City, NY 11530
Bar No. JS 9212
Phone: (516)378-840 Fax:(516)378-2700
Email: jgs@jacquessimon.com

## COMPLAINT VERIFICATION DECLARATION PURSUANT TO 28 USC §1746.

MARK NESSELSON MD affirms the following pursuant to 28 U.S.C. §1746.

1.   I am the Plaintiff in this action and as such I am fully familiar with all of the facts pertaining to this litigation.

2.   I have personal knowledge of the facts recited in this Verified Complaint herein.

3.   I have read the above Verified Complaint and know the facts therein to be true except to those facts stated to be upon information and belief and as to those I believe them to be true.

4.   I make this declaration pursuant to 28 U.S.C. §1746.

5.   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and I am aware that if any of the statements herein are knowingly false, I will be subject to punishment.

Dated: May 12, 2025

MARK NESSELSON MD