UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK NESSELSON M.D.,<br><br>                              Plaintiff,<br><br>         - against -<br><br><br>JAMES MCDONALD M.D., in his official capacity of Commissioner of the New York Department of Health; JOSEPH A. GIOVANNETTI, in his official capacity as Director of Bureau of investigations NYS Department of Health; MICHELLE MORSE M.D., in her official capacity as Commissioner of the New York City Dept. of Health and Mental Hygiene; NEW YORK CITY DEPT. OF HEALTH and MENTAL HYGIENE,<br><br>                         Defendants. | 25-CV-04464 (JLR)(OTW) |

## DECLARATION OF JOSEPH A. GIOVANNETTI

Joseph A. Giovannetti, an attorney duly admitted to practice law in the State of New York, hereby declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am the Director of the Bureau of Investigations within the Division of Legal Affairs at the New York State Department of Health ("DOH" or "Department").[1] As such, I oversee operations within DOH's Bureau of Investigations and supervise its staff. I am familiar with the facts set forth herein based upon personal knowledge, discussions with DOH staff, and review of DOH records.

---

[1] I understand that Plaintiff Mark Nesselson, M.D. ("Plaintiff" or "Dr. Nesselson") asserts claims against me and against James V. McDonald, M.D., M.P.H., Commissioner of the New York State Department of Health ("DOH Commissioner"), in our official capacities (together, "State Defendants").

2.      I submit this declaration in support of the State Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), based upon the Court's lack of subject matter jurisdiction, and in opposition to Plaintiff's motion for a preliminary injunction ("PI Motion") (ECF 28), and his motion to "revoke" the July 22, 2024 Subpoena ("Motion to Quash") (ECF 33).

Introduction and My Relevant Background

3.      I am an attorney licensed to practice law in New York and have been for over 13 years. Prior to my work with DOH, I served as Special Counsel to the Commissioner and Chief of Staff at the New York State Department of Transportation. Before that, I served as an Assistant United States Attorney in the Criminal Division of the United States Attorney's Office in the Northern District of New York. After graduating from law school in June 2011, I began my legal career as an Assistant District Attorney at the Manhattan District Attorney's Office.

4.      Through DOH, I have nearly five years of experience leading investigations of fraud and other misconduct involving vaccines, vaccinations, and immunization records.

5.      Since August 3, 2020, I have been authorized by the DOH Commissioner, pursuant to Public Health Law ("PHL") § 12-a, to compel the attendance of witnesses and the production of books, papers, and records concerning all matters within the jurisdiction of DOH. Attached hereto as Exhibit 1 is a true and accurate copy of the Designation of Investigative Authority addressed to me and others whose names have been redacted.

6.      Beginning in January 2021, I led New York's Vaccination Complaint Investigations Team, a statewide task force established to investigate complaints of fraud involving the State's COVID-19 Vaccination Program.

7.      In September 2023, I was put in charge of the Bureau of Investigations, a unit responsible for conducting a broad range of investigations including, but not limited to, those involving pediatric vaccination fraud.

Statutory and Regulatory Background Relevant to the Bureau of Investigations

8.      The DOH Commissioner is charged with broad responsibility for the "health and life of the people of the state," including the power to "establish and operate such adult and child immunization programs as are necessary to prevent or minimize the spread of disease and to protect the public health." PHL § 206(1)(a)-(1)(l). DOH is authorized to "promulgate such regulations as are necessary for the implementation" of this mandate, including for "quality assurance for immunization related activities." *Id.* § 206(1)(l).

9.      PHL § 2164 generally requires that children be vaccinated against certain diseases to enter  or  attend  any  public, private or parochial child caring center, day nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary school.[2] PHL § 2164(1), (7); N.Y. Comp. Codes R. & Regs. ("NYCRR"), tit. 10, §§ 66-1.1(f), 66-1.3(a).

10.     DOH is required to "develop and supervise the execution of a program of immunization, surveillance and testing, to raise to the highest reasonable level the immunity of the children of the state against communicable diseases including ... poliomyelitis, measles," and several other enumerated diseases. PHL § 613(1)(a).

---

[2] For certain diseases, demonstrated serological evidence of antibodies or laboratory confirmation of the disease may be acceptable proof of immunity. *See* 10 NYCRR § 66-1.1(g). Additionally, valid medical exemptions from school immunization requirements may be provided in lieu of proof of immunity. *See* 10 NYCRR § 66-1.3(c); PHL § 2164(8).

3

<u>The State and City Immunization Registries</u>

11.     In 2006, the State Legislature directed the DOH Commissioner to establish the New York State Immunization Information System ("NYSIIS") by legislation that is codified as PHL § 2168.  The New York City Department of Health and Mental Hygiene ("DOHMH") already had a vaccine registry in operation known as the Citywide Immunization Registry ("CIR").

12.     PHL § 2168 governs both NYSIIS and CIR, although they are separate systems, managed and operated by the respective commissioners of DOH and DOHMH.  *See, e.g.,* PHL § 2168(5)(e); 2168(6). Thus, DOH generally does not have access to or control over CIR, and DOHMH does not have access to or control over NYSIIS.

13.     In accordance with PHL § 2168, NYSIIS and CIR are to collect and maintain accurate and complete immunization information in a secure environment. Significantly, PHL § 2168(3)(a) requires healthcare providers to accurately report to CIR or NYSIIS *all* immunizations administered to children under 19 years of age to CIR or NYSIIS within 14 days of administration. State regulations are in accord: "[m]andated reporters [such as physicians] must report any immunization to a child less than 19 years of age to either NYSIIS or the CIR, depending on the location of administration of the vaccine," 10 NYCRR § 66-1.2(b)(2), "within 14 days of administration of the immunization." *Id.* § 66-1.2(c)(4).  This includes the reporting of specific data elements and any other information requested by the particular agency. *Id.*§ 2168(5)(a). Importantly, the certificates of vaccination or other paper documents that a parent or guardian submits to schools for admission purposes do not negate or replace the medical provider's statutory and regulatory obligation to register vaccinations in either CIR or NYSIIS.

14.     PHL § 2168 further provides that "[a]ll health care providers shall provide the department or, as appropriate, the city of New York with additional or clarifying information upon request reasonably related to the purposes of this section."  *Id.* § 2168(5)(c). Once submitted, such vaccination information is used by medical professionals, public health officials, school administrators, and other authorized NYSIIS or CIR users responsible for reducing illness, disability and death caused by vaccine-preventable diseases.

15.     The statute also confers on the Commissioner of DOHMH the authority to grant or deny access to CIR in his or her sole discretion: "The commissioner [] may refuse access to the [CIR] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation." *Id*. § 2168(9). The Commissioner of DOHMH is required to provide a method by which authorized users apply for access to the CIR. *Id*. § 2168(8).

The Bureau of Investigations' Efforts in Combating Vaccine Misconduct and Fraud

16.     As the COVID-19 emergency waned, DOH intensified its efforts to ensure compliance with PHL § 2164, utilizing the knowledge and insights gained from the Vaccination Complaint Investigations Team's experience with COVID-19 vaccination fraud. DOH's role in enforcing PHL § 2164 and conducting surveys of school vaccination rates has never been more important to the "health and safety of students and staff, and the public at large."[3]

17.     Based on experience from prior investigations and enforcement actions, the Bureau of Investigations is aware that the June 2019 amendment to Public Health Law § 2164, which eliminated non-medical exemptions to vaccinations required for school admittance, has

---

[3] New York State Department of Health et al., December 2022 Letter, available at https://www.health.ny.gov/prevention/immunization/schools/docs/immunization_letter_12-2022.pdf
(last visited August 19, 2025).

led to a black market for fraudulent pediatric vaccination records in New York State. Children who had previously qualified for non-medical exemption were, for the first time, required to show proof of vaccination to enroll and attend any school in New York. Some families sought fraudulent vaccination records, including from licensed healthcare professionals, rather than have their children vaccinated as required or, in the alternative, choose homeschooling.

18.    The Department has a legal obligation and public-health imperative to enforce the laws and regulations applicable to vaccination requirements for school admission and the reporting requirements related to NYSIIS and CIR. *See* PHL § 206(1)(f) ("The commissioner shall . . . enforce the public health law."). The Department is therefore empowered to use investigation and enforcement authority to ensure that all vaccination records are reported in the vaccine registries and that they are legitimate. Taking steps to identify and invalidate fraudulent vaccination records is a necessary component of DOH's statutory obligations set forth above.

19.    The Department has taken numerous steps to combat immunization fraud and prevent the entry of false information into the vaccine registries. For example, the Department set up a hotline for reporting vaccine fraud as well as a specific email address for that purpose (STOPVAXFRAUD@health.ny.gov). In addition, in recognition of the obligations imposed upon schools by PHL § 2164, the Department guides schools to recognize "red flags" or indicia of fraud on immunization records to help identify potential fraud and help determine whether such records are legitimate.[4]

---

[4] A copy of the two-page guidance document that DOH has provided to schools is attached to the Complaint as Exhibit A (ECF 1-1) at 4-5, and is available on DOH's website: https://www.health.ny.gov/prevention/immunization/schools/docs/spotting_fraudulent_record.pdf.

20.     Additionally, in furtherance of the Department and school administrators' obligations to enforce PHL § 2164, the Department notifies school administrators of such red flags or problematic vaccine records.  For example, the Department utilizes the Integrated Health Alert and Notification System ("IHANS") to relay such information to health care providers, public entities, schools and regulated entities, as appropriate.[5]

21.     On September 5, 2024, DOH created a devoted page on the section of its website relating to Childcare Programs, Schools and Post-secondary Institutions, entitled "School Vaccination Fraud Awareness," to aid in schools' compliance with PHL § 2164.[6]  DOH and schools routinely use this website as the primary and most reliable way of alerting schools as to fraudulent immunization records. The page is updated as necessary to provide relevant information. Annexed as Exhibit 2 hereto is a true and accurate copy of a printout of the current DOH website page.

22.     The Department has conducted numerous investigations into vaccine misconduct or fraud.  For example, in 2023, the Department uncovered massive fraud committed against both the Department and school districts throughout Long Island and beyond with serious and ongoing public health implications. Specifically, the Bureau of Investigations uncovered a scheme whereby a midwife located on Long Island named Jeanette Breen had generated phony records falsely reflecting 12,000 vaccinations purportedly administered to approximately 1,500

---

[5] IHANS is an application that provides health alert and information to Health Commerce System Users.  Health Commerce System ("HCS") is a closed communication network dedicated to secure data exchange and distribution of health-related information.  New York state HCS users often include, but are not limited to, providers, schools, hospital clinics, health departments, and state employees.

[6] https://health.ny.gov/prevention/immunization/schools/fraud.htm.

school-aged patients.  These fraudulent records were submitted to various schools for admission purposes.

23.    To date, through the Department's ongoing investigations—which have involved issuance of numerous subpoenas, witness and subject interviews, and myriad record reviews, among other things—DOH's vaccine-fraud related investigations have resulted in at least 50 arrests, three federal indictments, dozens of convictions, and the imposition of substantial monetary penalties against violators.

Investigation of Dr. Nesselson

24.    As reflected in the documents annexed as Exhibits to the Complaint, Dr. Nesselson has previously been investigated for and charged with vaccine-related professional misconduct. Compl., Exs. D (ECF 1-4), E (ECF 1-5).

25.    Specifically, he was charged with 17 specifications of professional misconduct in connection with vaccination practices relating to four patients.  ECF 1-4, at 12-16. The Statement of Charges asserted against Plaintiff included the following as to each of the four patients:

1.  Patient A's medical records include written reports and/or records by [Plaintiff] which falsely reflect that Patient received vaccinations which the patient never received.

    a.  [Plaintiff] made such false reports and/or records willfully.
    b.  [Plaintiff] did so knowingly and with the intent to mislead.

2.  If [Plaintiff] did administer vaccinations to Patient A, [Plaintiff] failed to comply with substantial provisions of federal and local laws, and/or rules, and/or regulations.

*Id*. at 12.

26.    In November 2007, Dr. Nesselson agreed to the terms of a Consent Agreement and Order ("Consent Order") in which he admitted that he was unable to successfully defend against at least one of the charges asserted against him. His medical license was suspended for

8

36 months, with the suspension stayed pending his completion of 36 months of probation as set forth in the Consent Order. ECF 1-4, at 5-9. During the probation period, a practice monitor approved by DOH was required to monitor Plaintiff's practice. *Id*. at 18-19.

27.     In 2011, following an investigation by DOH's Office of Professional Medical Conduct ("OPMC") regarding Dr. Nesselson's violation of the Consent Order, he entered into a "Modification Order," by which he was given an *additional* term of 36 months' probation, with specified conditions, including a mandatory practice monitor. Dr. Nesselson was represented by Lawrence F. Kobak, Esq., in connection with the 2011 Modification Order. ECF 1-5, at 7. The 2011 Conditions of Probation included requirements relating to Dr. Nesselson's maintenance of a vaccine log, and the practice monitor's regular review of the vaccine logs. ECF 1-5, at 28-30, ¶¶ 9, 11(a). By its terms, the probationary period ended as of April 12, 2014. Thus, Dr. Nesselson's medical license was suspended, with the suspension stayed pending his adherence to conditions of probation, including a practice monitor, for six years.[7]

28.     In 2023, I became aware of several reports that myriad vaccine certificates or other vaccine-related documentation signed by Dr. Nesselson had been "flagged" by school personnel who questioned the validity of certificates of vaccination prepared by Dr. Nesselson.[8]

29.     Some of the suspicious certificates created by Dr. Nesselson that were flagged by school personnel had been submitted to schools by former patients of Jeanette Breen; these students' vaccination records from Jeanette Breen had been invalidated, and the students

---

[7] Consistent with PHL § 230(10)(vii)(d)(iii), copies of the Statement of Charges and the Consent Order and Modification Order are publicly available.

[8] DOH's investigation of Dr. Nesselson is ongoing. To the extent that the Court would like to learn the details of the DOH investigation, State Defendants will submit such information for *in camera* review.

presented new vaccination records from Dr. Nesselson in order to be permitted to attend school pursuant to PHL § 2164.

30.     I also learned that Dr. Nesselson does not have access to *either* NYSIIS or CIR and has not reported to either vaccine registry that he had administered *any* vaccines over the course of his medical practice in New York state. Given that his office is located in New York City, he is obligated to report any vaccinations administered to a child less than nineteen years of age to CIR within 14 days of administration of the vaccine.

31.     In other words, either (1) Dr. Nesselson *had* vaccinated the patients as reflected in the certificates or paper records submitted to schools and violated PHL § 2168's mandatory reporting obligation, *or* (2) he had *not* vaccinated the patients, but completed fraudulent paper records reflecting that he did.  A combination of those two possibilities was also possible. Through my experience with prior investigations, I know that some providers involved in vaccination fraud provide a mix of fraudulent and authentic vaccination records depending on what each of their patients (or clients) requests and pays for.

32.     During our investigation, I also learned that in or about January 2024, Dr. Nesselson asked another Manhattan-based physician, Dr. Eileen Daar, to enter vaccination information into CIR reflecting that on January 31, 2024, vaccinations had been administered to one of Dr. Nesselson's patients. Having another provider enter his patient's vaccination information into CIR enabled Dr. Nesselson to circumvent the application and approval process for CIR access that he needed to go through in order to report it himself.

33.     I had Investigator Brian Cruz, who reports to me directly, interview Dr. Daar in May 2024. Dr. Daar informed Investigator Cruz that Dr. Nesselson had explained to her that because he did not have access to CIR, he wanted her to enter the vaccine information. Dr. Daar

10

informed Investigator Cruz that she had entered the vaccine information for numerous patients purportedly vaccinated by Dr. Nesselson. In response to a subpoena, Dr. Daar provided printouts of text messages from Dr. Nesselson that consisted of the names, dates of birth, and addresses of patients and the vaccinations that he had purportedly administered to those patients. According to Dr. Daar, these were the patients of Dr. Nesselson whose vaccination information she had reported to NYSIIS at Dr. Nesselson's request.

34.    DOH's investigation into Dr. Nesselson's pediatric vaccination practice has involved interagency collaboration with DOHMH. This began no later than October 2023, when DOHMH informed me that it had received several reports from school nurses about vaccinations purportedly administered by Dr. Nesselson and asked if I was able to assist with questions about how DOHMH should respond to constituent inquiries about him and the problematic immunization records that he produced.

35.    In February 2024, DOHMH reached out to inform DOH that Dr. Nesselson had applied for CIR access, that DOHMH was holding off on processing Dr. Nesselson's application, and that DOHMH wanted to confer with DOH's Bureau of Investigations for advice on how to proceed. In response, I advised DOHMH that they should maintain the status quo that DOHMH had established prior to contacting me, which was to delay processing the application in light of the ongoing investigation.

36.    In June 2024, DOHMH again reached out to me asking for my recommendation as to how to proceed with Dr. Nesselson's CIR application. In response, I recommended that DOHMH should not grant Dr. Nesselson access to CIR based on the status of our investigation and information gathered to date, including by DOHMH.

11

Issuance of the July 22, 2024 Subpoena to Dr. Nesselson

37.     Based on the information learned during our investigation, including as set forth above, Dr. Nesselson's vaccination practices were, at best, violative of PHL § 2168's mandatory reporting provisions.

38.     On July 22, 2024, I signed and issued a subpoena directed to Dr. Nesselson demanding the production of records related to his vaccination practices to further the above-described investigation (the "Subpoena"). The Subpoena was personally served upon Dr. Nesselson. A copy of the Subpoena is annexed as Exhibit B to the Complaint. ECF 1-2.

39.     The Subpoena consists of five requests for documents from Dr. Nesselson's medical practice:

> 1.  Any and all order forms, purchase orders, purchase/payment confirmations, invoices, bills, receipts, shipping notices, delivery notices, delivery confirmations, and packing slips related to the ordering, purchasing, shipping, receipt, and return of any and all of the following vaccines from **January 1, 2019**, to present: [list of 15 vaccines, *e.g.*, Polio, MMR, Td, as enumerated on a "Child & Adolescent Health Examination Form" used by Dr. Nesselson]. (Emphasis in original)
>
> 2.  Any and all records regarding immunizations administered by Dr. Nesselson and/or his associates to patients eighteen (18) years of age and younger from January 1, 2019 to present, including but not limited to completed copies of the "Child & Adolescent Health Examination Form" from the [DOHMH] and Department of Education; medical/clinical records (also known as "charts"); prescriptions; appointment/scheduling records; billing records, and communication, correspondence, and/or notes and any other records of communication, from, to, with, or on behalf of the parents and/or the patients' guardian(s)/healthcare proxies.
>
> 3.  Any and all email and text-message communication with Eileen Daar, M.D., regarding immunization/vaccination, immunization/vaccination patients, the [CIR], and submission of immunization/vaccination information to CIR.

12

4. Records sufficient to identify the name, date of birth, and last-known contact information (address and telephone number) of any and all individuals employed by Dr. Nesselson for any period of time from January 1, 2019, to present.

5. Any and all application materials and communication, including email and text messages, regarding application by Dr. Nesselson for a [CIR] account.

ECF 1-2.

40.    As is clear from the Subpoena, the requested documents relate to Dr. Nesselson's vaccination practices, primarily from January 1, 2019, *i.e.*, the year that non-medical exemptions were removed from Public Health Law § 2164, to the date of the Subpoena. All of the requested documents relate to and arise from our investigation of Dr. Nesselson's vaccination practices and compliance with Public Health laws and regulations.

41.    The requests are clearly relevant to DOH's investigation and narrow in scope. Request #1 seeks information concerning Plaintiff's purchase orders for childhood vaccines from January 1, 2019 to the date of the Subpoena. DOH is investigating whether Plaintiff actually gave children the vaccinations he claimed to provide. Thus, it is important to know the number and type of vaccines Plaintiff had on hand during the period encompassed by the request. This request (and the others) is limited to childhood vaccines and does not concern other vaccines that a physician may administer, and it seeks only records beginning in 2019, which Plaintiff is obligated to retain. N.Y. Education Law 6530(32) ("patient records must be retained for at least six years").

42.    Request #2 seeks children's medical records concerning, *inter alia*, when they were allegedly immunized and when they had appointments. Those records too will aid the investigators in determining whether Plaintiff actually provided the vaccinations he claimed to give. Moreover, to the extent that Dr. Nesselson actually administered the vaccinations, each

13

such record represents a PHL 2168 violation, since we know that he did not report any of them to CIR, as required by the statute.

43.     Request #3 seeks information concerning Plaintiff's communications with Dr. Eileen Daar regarding vaccinations. As this is a physician who has admitted that Dr. Nesselson asked her to submit vaccination records to the CIR, the request is clearly relevant to our investigation, as referenced above. The Department has an obligation to ensure that providers who have not been granted access to NYSIIS or CIR are not using other providers to circumvent the application and approval process; reviewing these communications between Dr. Daar and Dr. Nesselson could corroborate Dr. Daar's statements, as well as help DOH identify any additional instances of this occurring.

44.     Request #4 seeks information about Dr. Nesselson's current and former employees during the period from January 1, 2019 to the date of the Subpoena. These individuals are possible witnesses to Dr. Nesselson's vaccination practices and record-keeping, and their contact information is therefore relevant to our investigation.

45.     Finally, Request #5 seeks documents *regarding* Dr. Nesselson's application to CIR, including application materials, communications, texts, and emails. DOHMH is an agency entirely separate and apart from DOH, and DOH is not in possession of application materials or communications exchanged between Plaintiff and DOHMH. Moreover, the request encompasses more than just communications between Dr. Nesselson and DOHMH, and may reveal, for example, that Dr. Nesselson communicated with medical providers other than Dr. Daar regarding his CIR status.

<u>Dr. Nesselson's Compliance with the Subpoena</u>

46.    On July 25, 2024, I received an email and attached letter from Lawrence Kobak, Esq., informing me that he represented Dr. Nesselson and would provide the materials requested in the Subpoena.[9] Mr. Kobak also telephoned me that morning to introduce himself and request that I permit the responsive documents to be produced on a "rolling basis" rather than by the deadline set forth in the Subpoena.  A true and correct copy of the July 25, 2024 letter from Mr. Kobak is annexed hereto as Exhibit 3.

47.    During our July 25, 2024 telephone conversation, I explained the subject matter and serious nature of our ongoing investigation. I noted that Dr. Nesselson did not have access to either CIR or NYSIIS and therefore may not administer any vaccinations subject to PHL § 2168's mandatory reporting requirement.

48.    At no time during our conversation, *i.e.*, either before or after I explained the nature of our investigation, did Mr. Kobak object to the terms of the Subpoena, other than to ask for a modification of the deadline for production, to which I agreed. That same morning, I emailed Mr. Kobak to confirm that Dr. Nesselson would produce the responsive materials on a rolling basis and as soon as possible.

49.    On July 31, 2024, I received another email from Mr. Kobak in which he confirmed the substance of our discussion regarding the Subpoena, including Dr. Nesselson's cessation of pediatric vaccinations:

> Hi Joe,
> Just to assure you that **Dr. Nesselson has assured me that he is neither billing for nor giving any vaccinations to any patients**. Additionally, he is purchasing a scanner in the next day or two to

---

[9] As noted above, Mr. Kobak had represented Dr. Nesselson in connection with the 2011 Modification Order.

> begin scanning. As promised, I will forward you what he forwards me in a timely fashion.
> Thank you.

Email July 31, 2024 from Lawrence F. Kobak, Esq. to Joseph Giovannetti, a true and correct copy of which, with related email chain, is annexed hereto as Exhibit 4. (Emphasis added).

50.    Thereafter, Dr. Nesselson provided, on a rolling basis, voluminous records in response to the Subpoena.[10]  In response to my request for a status update, Mr. Kobak informed me by email dated September 27, 2024 that Dr. Nesselson had estimated that he had already produced about "55%" of the requested material as of that date.

51.    On October 7, 2024, Mr. Kobak emailed me three sets of zip files containing additional documents in response to the Subpoena.

52.    On October 25, 2024, I emailed Mr. Kobak about the status of Dr. Nesselson's production of responsive documents.  I wrote:

> First, we need a **hard deadline** now for any outstanding records that are responsive to our subpoena. We can discuss what's still outstanding and a reasonable deadline given that he's now had since mid-summer to produce on a rolling basis.
>
> Second, we continue to receive almost daily reports about Dr. Nesselson's continued activity around purported vaccinations, vaccine records, exemption applications. Today, we received information that his staff has provided patients with misinformation about NYSDOH restrictions around Dr. Nesselson immunization records. All of this suggest to me that Dr. Nesselson doesn't understand the seriousness of our investigation and its implications.

---

[10] In his Declaration filed in support of his Motion to Quash the Subpoena, Dr. Nesselson represents that he provided me with files relating to approximately 500 patients. ECF 33-1, ¶ 10. In fact, the records provided by Dr. Nesselson relate to approximately 327 patients. Many of the records were duplicative and barely legible.

A true and accurate copy of my October 25, 2024 email exchange with Mr. Kobak is annexed hereto as Exhibit 5. (Emphasis in original).

53.    Within an hour, Mr. Kobak replied to my email, stating: "I left Dr. Nesselson a message to see when he can finish up the copying. I am not sure what reports you are getting, but he takes this very seriously." *Id*.

Notification to Schools Regarding "Paper-only" Vaccine Records Prepared by Dr. Nesselson

54.    As referenced in my October 25, 2024 email to Mr. Kobak, notwithstanding Dr. Nesselson's representation on July 31, 2024 that he was "neither billing for nor giving any vaccinations to any patients" as of that date, I continued to receive reports from school personnel that they had received paper records prepared and/or signed by Dr. Nesselson *after* July 31, 2024.

55.    Legally, all vaccinations must be entered into CIR or NYSIIS within 14 days of administration in accordance with PHL § 2168.  In furtherance of DOH's statutory obligations, DOH alerted school administrators that paper-only records reflecting vaccination administered by Dr. Nesselson after July 31, 2024 could not be accepted by the schools for purposes of admission.

56.    The July 31, 2024 cut-off date was used, in part, because Dr. Nesselson had never reported any vaccinations to NYSIIS or CIR, and therefore DOH did not have an understanding as to the volume of paper-only records he had created. The Department was concerned that if it invalidated all of his paper-only records then the real-world implications could be enormous, with potentially tens of thousands of students across New York State affected.

57.    In 2023, in connection with the Jeanette Breen matter, DOH dealt with invalidation of vaccination records involving 1,500 *known* students, mostly concentrated on

17

Long Island. We knew from our prior experience how difficult it can be to address the myriad logistical issues that arise, including communications and coordination with school administrators, parents, and local health officials. For that reason, given the status of our investigation of Dr. Nesselson as of October 2024, and our ongoing efforts to learn the volume of impacted patients, including through our Subpoena, our preliminary approach was a conservative one. Thus, we limited the scope of invalidated paper-only records to any vaccinations that Dr. Nesselson purportedly administered after July 31, 2024, *i.e.*, the date upon which he represented, through his counsel, that he was neither "billing for nor administering any vaccinations," and after we had most recently communicated to him explicitly, through his counsel, that he may not administer vaccinations in direct violation of PHL 2168, which is what he had been doing without CIR access.

58.     This reasonable determination by DOH was made in light of Dr. Nesselson's representation regarding his cessation of vaccinations, his history of professional misconduct regarding vaccination records which already put his vaccination records under a cloud of suspicion, and based on the Department's knowledge that numerous school personnel had recently and repeatedly questioned the validity of vaccine certificates Dr. Nesselson had prepared.

59.     If suspicious and unreliable providers are routinely permitted to provide paper-only vaccination certificates—in violation of Public Health Law, without any oversight by the Department and with no obligation to report to CIR or NYSIIS—the underlying purpose of the vaccine registries would be undermined, and the entire vaccination reporting system would be weakened. DOH and DOHMH would be unable to check such records for red flags that indicate vaccine fraud, and school administrators would be unable to cross-check or verify the accuracy

of the paper documents. This would incentivize unscrupulous providers to issue fake vaccination records under the radar, on paper only, without submitting such records to CIR or NYSIIS (and avoiding scrutiny by the Department). Allowing such conduct guts the legislative intent behind PHL § 2168 and puts all students and the community at risk of deadly, contagious diseases.

60.    On or about October 1, 2024, DOH added a reference to Dr. Nesselson on its website page regarding school vaccine fraud awareness.  The reference initially stated that Dr. Nesselson had been "suspended" from CIR, whereas in fact Dr. Nesselson did not and does not have access to either CIR or NYSIIS and has never reported any vaccinations to either system. The page has been corrected to remove the reference to a suspension from the posting of Dr. Nesselson's name. The website page also states that "[p]aper-only records of vaccinations administered after 7/31/2024 from this provider must not be accepted." *See* Ex. 2.

61.    On October 15, 2024, DOH's Division of Vaccine Excellence ("DOVE") sent an IHANS notice entitled "Informational Message: Important Guidance Re: Dr. Nesselson Vaccination Records" to school administrators, nurses, data reporters and others. A true and correct copy of the email notification is annexed hereto as Exhibit 6.

62.    The informational message incorporated the July 31, 2024 vaccination cessation date that Dr. Nesselson had represented to me:

> It has come to The New York State Department of Health's attention that Dr. Mark Nesselson has been providing paper vaccination records that are not recorded in the [NYSIIS] or, in New York City, [CIR].  Public Health Law Section 2168 states that medical practitioners must enter all vaccinations they administer to children under the age of 19 into NYSIIS or, in New York City, the CIR, within 14 days of administering the vaccination.  If you come across paper records from Dr. Nesselson that are not recorded in NYSIIS or CIR **after July 31, 2024**, you must not accept them.

19

> Additionally, handwritten statements from any provider that a student has had positive titers must only be accepted if accompanied by official laboratory results confirming immunity. Doctors' notes alone are not acceptable as proof of immunity.

*Id*. (emphasis in original).

<u>Plaintiff's Substitution of Counsel as of October 27, 2024</u>

63.    By email dated October 27, 2024 and attached letter dated October 28, 2024, Jacques Simon, Dr. Nesselson's counsel of record in this case, informed me that he was replacing Mr. Kobak as counsel and that any further communications regarding the Subpoena should be directed to him. Separately, I received an email from Mr. Kobak confirming that he was withdrawing as Dr. Nesselson's counsel. A true and correct copy of Mr. Simon's October 28, 2024 letter is annexed hereto as Exhibit 7.

64.    In his October 28 letter, Mr. Simon informed me that he was suspending "all document production which was in progress from Dr. Nesselson," until he had an opportunity to "familiarize [himself] with this case," which he anticipated would take him no longer than two weeks. *Id*.

65.    In response to my follow-up inquiries during late 2024 and early 2025, Mr. Simon repeatedly assured me that he would be in touch with me to discuss his client's response to the Subpoena, but due to his travel and/or illness, he did not do so.

66.    Since January 21, 2025, I have not had any communication with Mr. Simon or Dr. Nesselson, or taken any steps to enforce the Subpoena.

67.    Neither attorney representing Dr. Nesselson ever asked that DOH withdraw or modify the Subpoena, with the exception of the deadline for production of responsive documents.  Similarly, neither attorney ever asked that DOH remove the posting of Dr. Nesselson's name on the website page, or otherwise objected to it.

21

Dated: Albany, New York
      September 17, 2025

_____
    Joseph A. Giovannetti

21