UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK NESSELSON M.D.,

                       Plaintiff,

        -against-

JAMES MCDONALD MD in his official
capacity as Commissioner of NYS
Department of Health; JOSEPH A.
GIOVANNETTI in his official capacity as
Director of Bureau of Investigations NYS
Department of Health; MICHELLE MORSE
M.D. in her official capacity as Commissioner
of the New York City Dept. of Health and
Mental Hygiene; NEW YORK CITY
DEPARTMENT OF HEALTH AND
MENTAL HYGIENE,

                       Defendants.

Case No. 1:25-cv-04464 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Mark Nesselson, M.D. ("Plaintiff" or "Nesselson") applied for access to a government-run central vaccination database and, while awaiting approval, learned that he was under investigation for his vaccine-related practices. He now sues various individuals and entities of the City and State of New York in connection with that investigation and his still-pending application to the database. Before the Court are Plaintiff's motion for a preliminary injunction, Plaintiff's motion to quash a subpoena, and two motions to dismiss — the first filed by Defendants New York City Department of Health and Mental Hygiene ("DOHMH") and DOHMH Commissioner Michelle Morse, M.D. (together with DOHMH, the "City Defendants"); the second by Defendants New York State Department of Health ("DOH") Commissioner James McDonald, M.D. ("Commissioner McDonald") and DOH's Bureau of Investigations Director Joseph A. Giovannetti ("Director Giovannetti" and, together with Commissioner McDonald, the

"State Defendants").  For the following reasons, the motions to dismiss filed by the City

Defendants and the State Defendants (together, "Defendants") are GRANTED, Nesselson's

motion to quash is DENIED, and his motion for a preliminary injunction is DENIED.

## BACKGROUND

### I.    Relevant Facts

The following facts are taken from the Amended Complaint and accepted as true for

purposes of the motions to dismiss.  *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015).

Nesselson is a pediatrician licensed to practice in New York.  Dkt. 49 ("Am. Compl." or

the "Amended Complaint") ¶ 2.  From 2010 to 2024, Nesselson's medical practice included

"vaccinat[ing] his pediatric patients[,] and he routinely provided paper documentation to schools

evidencing such vaccinations."  *Id.* ¶ 62.  Under New York law, healthcare providers who, like

Nesselson, administer vaccinations to patients under nineteen years old must "report, in a format

prescribed by the city of New York commissioner of health and mental hygiene, all such

immunizations to the citywide immunization registry."  *Id.* ¶ 87 (quoting N.Y. Pub. Health L.

§ 2168(3)(a)(i)).  To comply with that law, providers must apply for and be granted access to the

New York Citywide Immunization Registry ("CIR").  *Id.* ¶¶ 93, 95, 97.[1]

On February 27, 2024, Nesselson applied for access to the CIR.  *Id.* ¶ 63.  According to

Nesselson, the CIR application process is intended to be "ministerial," *id.* ¶ 93, and so the City

Defendants must "grant access to the []CIR to a licensed practitioner once he meets the

qualifications of licensure and the conditions set in the application, which [Nesselson] did here,"

*id.* ¶ 101.  After submitting his application, Nesselson alleges, he "repeatedly called" the CIR's

---

[1] The same statute that requires reporting to the citywide registry also requires reporting to a statewide registry.  *See generally* N.Y. Pub. Health L. § 2168; Am. Compl. ¶ 96.  Nesselson's access to the statewide registry, known as the New York State Immunization Information System ("NYSIIS"), is not at issue in this case.

"support team" and was "repeatedly [told] that he w[ould] be contacted shortly" regarding his status.  *Id.* ¶ 64.  Yet he never heard back, and the City Defendants never processed his application.  *Id.* ¶¶ 65, 72.

In July 2024, the State Defendants — on a site they maintain "to help schools recognize red flags on immunization records to stop fraud" (the "Website") — listed Nesselson as "currently suspended from using the [CIR] as of 7/31/2024," and stated that "[p]aper-only records of vaccinations administered after this date from [Nesselson] must not be accepted."  *Id.* ¶ 69 (citation omitted).[2]  According to Nesselson, the State Defendants made this posting without first providing him with any notice or hearing, *id.*, and at the time Nesselson "had no restriction, no probation terms and no limitations in his license," *id.* ¶ 77(b).  Moreover, Nesselson maintains, the posting is inaccurate, as his application to the CIR was, in fact, "never processed." *Id.* ¶ 72.

On July 2, 2024, Nesselson received an "open ended subpoena" duces tecum from the State Defendants.  *Id.* ¶ 68; *see also* Dkt. 49-2 (the "Subpoena").  The Subpoena demanded that Nesselson produce, by August 9, 2024, records related to his purchases of, administrations of, and communications concerning vaccines over a particular time period; records identifying his employees; and communications concerning his application to, and use of, the CIR.  Subpoena at

---

[2] In one paragraph of the Amended Complaint, Nesselson alleges that the State Defendants posted this on July 2, 2024.  Am. Compl. ¶ 69.  In another, he alleges it was posted on July 31, 2024.  *Id.* ¶ 77(b).  The precise date does not appear significant to the present motions.  As of the date of this Opinion and Order, the State Defendants' website reads as follows: "Mark Nesselson, MD – Is based in New York, NY and does not have access to either the Citywide Immunization Registry or the New York State Immunization Information System.  Paper-only records of vaccinations administered after 07/31/2024 from this provider must not be accepted." *School Vaccination Fraud Awareness*, N.Y. State Dep't of Health, https://health.ny.gov/prevention/immunization/schools/fraud.htm [https://perma.cc/V4LT-3P6Y] (last visited July 27, 2026); *see also* Dkt. 63 at 36 n.29 ("DOH deleted the language concerning [Nesselson's] suspension in September 2025.").

1-3.  The Subpoena stated that it was issued under "[t]he authority" of "Public Health Law § 206(4)(a) and § 12-a(1)."  *Id.* at 3.  Commissioner McDonald's name and title appear at the bottom of the Subpoena, but the Subpoena is signed by Director Giovannetti, who is identified as the Director of the New York State Department of Health's Bureau of Investigations.  *Id.*  On advice of counsel, Nesselson complied with the Subpoena and "ma[d]e an indiscriminate mass production of records" to the State.  Am. Compl. ¶ 117.  He later obtained new counsel and, on advice of that new counsel, ceased all compliance with the Subpoena.  *Id.*  In addition to the Subpoena, Nesselson later received a letter from the Office of Professional Medical Conduct ("OPMC") dated July 26, 2024, requesting certain patient records.  *Id.* ¶ 68(b)-(c); *see* Dkt. 49-6.[3]  He complied with the request.  Am. Compl. at 24 ¶ 70.  But, "unaware of the [S]tate [D]efendants' postings on the branding site," he "continued to vaccinate patients and provide paper documentation of such vaccinations through November 14, 2024."  *Id.*

## II.    Procedural History

Nesselson initiated this action on May 29, 2025, *see* Dkt. 1, moved for a preliminary injunction on August 4, 2025, *see* Dkts. 28-29, and moved to quash the Subpoena on August 7, 2025, *see* Dkts. 33-34.  On September 16 and 17, 2025, respectively, the City Defendants and State Defendants moved to dismiss the complaint and filed opposition to Nesselson's motion for a preliminary injunction and motion to quash.  *See* Dkts. 37-43.  On October 7, 2025, Nesselson filed an amended complaint.  *See* Dkt. 45.  Accordingly, on October 16, 2025, the Court denied as moot Nesselson's motion for preliminary injunction and motion to quash, and Defendants'

---

[3] In one paragraph of the Amended Complaint, Nesselson states that the letter is dated July 22, 2024. Am. Compl. ¶ 68.  In another paragraph — which is marked as paragraph 70 but is placed, curiously, between paragraphs 77 and 78 — he states that it is dated July 22, 2022.  *Id.* at 24. Both statements are wrong.  *See* Dkt. 49-6.

4

motions to dismiss.  *See* Dkt. 48.  On October 17, 2025, Nesselson filed the Amended Complaint, which is a corrected version of the pleading filed the week before.  *See* Am. Compl.

Nesselson purports to assert four causes of action in the Amended Complaint.  First, he seeks a "mandatory temporary injunction" under Federal Rule of Civil Procedure ("Rule") 65, requiring that the State Defendants remove his name from the Website.  Am. Compl. ¶ 123; *see also* ¶¶ 121-25.  Second, he seeks a preliminary injunction under Rule 65 that (1) prohibits the City Defendants from "continu[ing] to deny [him] access to [the CIR] by failing and refusing to process his application," (2) prohibits the State Defendants from maintaining his name on the Website, and (3) prohibits the State Defendants from "continu[ing] to pursue" the Subpoena.  *Id.* ¶ 142; *see also* ¶¶ 142-44.  Third, he seeks a permanent injunction under 42 U.S.C. § 1983 prohibiting Defendants from engaging in the same three forms of conduct.  *Id.* ¶ 146; *see also id.* ¶¶ 145-56.  Fourth, he seeks a declaratory judgment under 28 U.S.C. § 2201, declaring that these same forms of conduct violate Nesselson's constitutional rights, and that New York Public Health Law §§ 206(4)(a) and 12-a(1) are "unconstitutional as applied by the Defendants and [are] violative of the Fourth Amendment for the purposes [of] vesting investigators of the NYS DOH with powers to issue subpoenas which they simply cannot and do not have without violating the Fourth Amendment."  *Id.* ¶ 159; *see also id.* ¶¶ 157-78.

On November 16, 2025, Nesselson again moved for a preliminary injunction, Dkts. 52-53, and to quash the Subpoena, Dkt. 54.  On January 14, 2026, Defendants moved to dismiss the Amended Complaint and opposed Nesselson's motions.  *See* Dkts. 59, 60 ("City Br."), 61, 62, 63 ("State Br."), 64.  Nesselson filed opposition briefs on March 2, 2026.  *See* Dkts. 67, 68 ("Opp. to City"), 69 ("Opp. to State").  Defendants filed replies on April 17, 2026.  *See* Dkts. 80 ("City Reply"), 81 ("State Reply").  The motions are therefore fully briefed.  After the motions were fully briefed, Defendants submitted *Guggenheim v. McDonald*, No. 25-cv-03615 (PKC), 2026

WL 1075924 (S.D.N.Y. Apr. 20, 2026), and *Khan v. McDonald*, No. 25-2550, 2026 WL 1361834 (2d Cir. May 15, 2026) (summary order) as supplemental authority in support of their motions to dismiss.  *See* Dkts. 82-83, 85-86.  Nesselson filed a letter contesting the applicability of *Guggenheim* to the facts of the instant case, *see* Dkt. 84, but he did not address *Khan*.  As the Court will explain, the Court finds both cases well-reasoned and applicable here.

## LEGAL STANDARD

"A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  That power is confined, by Article III of the Constitution, to cases and controversies in which the plaintiff has a "personal stake."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  A plaintiff establishes that stake by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 423).  Where a "plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical,'" the "plaintiff's claim is constitutionally unripe," *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), and the district court cannot entertain it, *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ("Ripeness is a jurisdictional inquiry.").

Only after resolving challenges to a plaintiff's standing may a court reach the merits of his claims.  *See Calcano*, 36 F.4th at 74.  In that merits inquiry, a plaintiff's complaint is subject to dismissal "to the extent that it 'fail[s] to state a claim upon which relief can be granted.'"

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)).  On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)).  However, the Court need not "accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'"  *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

The Court notes at the outset that, while Nesselson purports to plead four causes of action in the Amended Complaint, only one is a valid claim on its own: the third, which alleges constitutional violations under 42 U.S.C. § 1983 ("Section 1983").  *See* Am. Compl. ¶¶ 145-56. The other three merely seek an injunction or declaratory judgment.  *See id.* ¶¶ 121-44, 157-78. Those are remedies; they are not standalone causes of action.  *See, e.g.*, *Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*, 791 F. Supp. 3d 433, 442 n.7 (S.D.N.Y. 2025) ("[I]t is well settled that an injunction is a remedy, not a cause of action." (quoting *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, 737 F. Supp. 3d 195, 211 (S.D.N.Y. 2024))); *U.S. Bank Nat'l Ass'n v. Mattone*, 769 F. Supp. 3d 298, 316 (S.D.N.Y. 2025) ("An injunction (whether preliminary or final) is a form of relief, not an independent cause of action."); *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) ("[T]here is no independent cause of action for a declaratory judgment, . . . [and] a plaintiff properly obtains declaratory relief only 'based on

other laws' — *i.e.*, a law other than the Declaratory Judgment Act — 'that the defendant allegedly violated.'" (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 247 F.R.D. 420, 422-23 (S.D.N.Y. 2007))).  Therefore, the Court dismisses Nesselson's first, second, and fourth causes of action and, instead, construes them as the relief he seeks in connection with his Section 1983 claim.  *See Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 472-75 (S.D.N.Y. 2021) (dismissing count pleaded "as a standalone declaratory judgment cause of action" and, instead, considering it "as a request for declaratory relief in connection with [the two breach of contract–related counts] of the [c]omplaint"); *TufAmerica, Inc. v. Universal Music Publ'g, Inc.*, No. 24-cv-02585 (DEH), 2025 WL 2700249, at *2 (S.D.N.Y. Sept. 23, 2025) (similarly dismissing counts seeking only injunction and declaratory judgment and deeming them requests for relief in connection with copyright claim), *appeal filed*, No. 25-2380 (2d Cir. Sept. 30, 2025); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) (similar); *Guggenheim*, 2026 WL 1075924, at *2 (construing complaint "as asserting a single cause of action under section 1983, under which [plaintiff] seeks a preliminary injunction, a permanent injunction and declaratory relief").

Having addressed this threshold issue, the Court turns to Nesselson's Section 1983 claim.

## I.     Applicable Law

Section 1983 provides a civil cause of action for those "depriv[ed] of any rights, privileges, or immunities secured by the Constitution" at the hands of anyone acting "under color of" state law.  42 U.S.C. § 1983.  The statute "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).  Accordingly, a claim under Section 1983 consists of two elements: (1) "[t]he conduct at issue 'must have been committed by a person acting under color of state law,'" and

8

(2) the conduct "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  There is no dispute here concerning the first element.  In support of the second element, Nesselson alleges that the City Defendants violated the Fifth and Fourteenth Amendments by failing to give him access to the CIR, and that the State Defendants violated the Fourth, Fifth, and Fourteenth Amendments by making and maintaining the Website posting and issuing the Subpoena.  Am. Compl. ¶ 146(a)-(d).  The Court addresses these legal theories in turn.

## II.    The Fifth Amendment

As an initial matter, Nesselson cannot maintain a Section 1983 claim against Defendants premised on the Fifth Amendment, because the Fifth Amendment applies only to the federal government.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law." (internal quotation marks omitted)); *accord Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009).  Nesselson has not named any federal defendant or alleged any conduct by a federal actor here.  To the extent that Nesselson's Section 1983 claim rests on an alleged Fifth Amendment violation, then, it is dismissed.  *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 412 n.1 (S.D.N.Y. 2013) (dismissing Section 1983 claim based on Fifth Amendment where "the only defendants are municipal entities and officials," because "the Fifth Amendment only applies to claims against the federal government"); *Jain v. City of New York*, No. 20-cv-05442 (JMF), 2021 WL 6064204, at *4 (S.D.N.Y. Dec. 22, 2021) (dismissing Fifth Amendment claim where "[d]efendants [we]re state and local officials"); *Ambrose*, 623 F. Supp. 2d at 466 (dismissing Fifth Amendment claim where, "[b]ecause

[p]laintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment").

## III.     The Fourth Amendment

Nesselson alleges that the Subpoena violates his Fourth Amendment rights because it is overbroad, improperly issued by Commissioner McDonald and Director Giovannetti, and otherwise unauthorized by state law. *See, e.g.*, Am. Compl. ¶¶ 116, 120. The Court need not reach the substance of this claim, however, because Nesselson lacks Article III standing to bring it.

The Second Circuit addressed an identical Fourth Amendment claim in *Khan*. There, the DOH had "issued an administrative subpoena [to the plaintiff physician] seeking six categories of documents" related to his vaccine orders and immunization records, and the plaintiff contended that that subpoena "violated the Fourth Amendment." *Khan*, 2026 WL 1361834, at *1. However, the Second Circuit explained, the plaintiff was "not required by law to comply with the subpoena's demands unless DOH obtain[ed] a court order" compelling that compliance. *Id.* at *3. Moreover, DOH had not taken any step to obtain such an order, and the plaintiff "ha[d] not alleged that DOH will imminently seek to enforce the subpoena in court, nor any facts upon which [the court] could reasonably draw such an inference." *Id.* As a result, the plaintiff could not "'establish a present injury' arising from the issuance of the [subpoena]" alone, and he therefore "lack[ed] standing to bring his Fourth Amendment claims bearing on the subpoena." *Id.* (alteration adopted) (quoting *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1124 (2026)).

Nesselson's pleadings here require the same outcome, and Nesselson's attempts to resist it are unpersuasive. He argues that he must be afforded "pre[-]compliance judicial review" of

the Subpoena, because otherwise he "can be subjected to civil penalties, contempt of court and further he can be prosecuted by [OPMC] in an administrative disciplinary non[-]judicial enforcement action."  Opp. to State at 19.  He is incorrect both in premise and in conclusion.  In the first instance, the State Defendants' only remedy for Nesselson's noncompliance with the Subpoena is "mov[ing] in the [New York State] supreme court to compel [that] compliance."  CPLR § 2308(b)(1).  Nesselson would be subject to contempt, if at all, only after the State Defendants move to compel, after the state court grants the motion, and after Nesselson refuses to comply with the state court's order.  *See Reuters Ltd. v. Dow Jones Telerate, Inc.*, 662 N.Y.S.2d 450, 453 (N.Y. App. Div. 1997) ("[A] person who is served with a non-judicial subpoena cannot be held in contempt for failure to comply unless and until a court has issued an order compelling compliance, which order has been disobeyed[.]  Thus, . . . one who is served and does not wish to comply may safely wait until the party who served the subpoena moves to compel compliance." (citation omitted)).[4]  But, as in *Khan*, none of that has occurred here, and Nesselson has not pleaded facts sufficient to indicate that any of it is imminent.  Indeed, Nesselson alleges that he already complied with the Subpoena by making a significant production of documents.  *See* Am. Compl. ¶ 117 (alleging that, on advice of counsel, Nesselson "ma[d]e an indiscriminate mass production of records" to the State Defendants in response to the Subpoena).  The Court cannot draw from those pleadings that Nesselson will soon face a noncompliance-related penalty or other form of enforcement mechanism.

---

[4] Nesselson's appeal to additional possible penalty under New York Education Law § 6530(28) — which provides that it is professional misconduct to fail to respond, within thirty days, to any communication from DOH "with respect to an inquiry or complaint about the licensee's professional misconduct," *see* N.Y. Educ. Law § 6530(28) — appears misplaced, inasmuch as he alleges that he already responded to the Subpoena.  *Compare* Opp. to State at 19, *with* Am. Compl. ¶ 117.

In other words, here, as in *Khan*, Nesselson warns of possible future harm he may never face.  As a result, his "claimed injury . . . is not 'actual or imminent,' but instead 'conjectural or hypothetical,'" and his Fourth Amendment claim based on his mere receipt of the Subpoena "is constitutionally unripe."  *Nat'l Org. for Marriage*, 714 F.3d at 688 (quoting *Lujan*, 504 U.S. at 560).  Therefore, the Court lacks authority to decide it, *Murphy*, 402 F.3d at 347 ("Ripeness is a jurisdictional inquiry."), and it is dismissed.

For all the same reasons, Nesselson's motion to quash the Subpoena is not ripe, either. *See Schulz v. I.R.S.*, 395 F.3d 463, 464 (2d Cir. 2005) (holding that plaintiff's motion to quash an IRS summons was not ripe, because "IRS summonses have no force or effect unless the [IRS] seeks to enforce them," but "[t]he IRS has not initiated any enforcement procedure against [plaintiff] and, therefore, what amount to requests do not threaten any injury to [plaintiff]"); *see also Khan v. McDonald*, No. 24-cv-04745 (JMA) (ST), 2025 WL 2726607, at *3 (E.D.N.Y. Sept. 25, 2025) (denying plaintiff's motion to quash "a state pre-enforcement subpoena" as "not ripe for judicial review" and explaining that such a challenge "becomes 'ripe' for adjudication when the plaintiff 'cannot refuse to respond to the document demands without consequence.'" (quoting *Mohammadi v. Tong*, No. 24-cv-01473, 2025 WL 1029862, at *1 (D. Conn. Apr. 7, 2025))), *aff'd*, No. 25-2550, 2026 WL 1361834 (2d Cir. May 15, 2026) (summary order). Accordingly, the motion to quash is also denied.

## IV.    The Fourteenth Amendment

Nesselson also seeks to support his Section 1983 claim by alleging a violation of his Fourteenth Amendment right to due process.  His theory is twofold.  First, he argues that the City Defendants' "failure and refusal to process [his] application for the [CIR] . . . amounts to a de facto medical license restriction" without due process, Am. Compl. ¶ 22, and thus violates his Fourteenth Amendment right to his "unencumbered license to practice medicine," *id.* ¶¶ 107,

109; *see also id.* ¶ 114 (alleging that this same conduct violates Nesselson's Fourteenth Amendment "right[] to practice his vocation").  He alleges that the State Defendants violated his rights in the same way through the Website posting.  *See id.* ¶¶ 146(c), 159.  Second, he argues that he "has a due process right in acquiring access to the []CIR as [the City] [D]efendants' authority is limited to the ministerial task of processing the application and granting him such access."  *Id.* ¶ 24; *see also id.* ¶ 88 ("The Plaintiff has a due process property right in obtaining access to the []CIR database under the Fourteenth Amendment in order to facilitate his unencumbered practice of medicine under his unrestricted medical license."); *id.* ¶ 106 ("In short, the Plaintiff has a due process right in obtaining access to the []CIR[.]").  Before reaching the merits of these theories, the Court must first address Defendants' threshold arguments as to standing and sovereign immunity.

## A. Standing

Defendants first argue that Nesselson lacks standing to bring these claims — the City Defendants because Nesselson "admits that no decision has yet been made denying him access to the []CIR," City Br. at 12, and the State Defendants because Nesselson has not alleged "facts indicating that [the Website posting] will have any practical impact upon his practice, his medical license, or his income," and thus has not pleaded an injury, State Br. at 25.  The Court disagrees.

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute[.]"  *ASARCO Inc. v. Kadish*, 490 U.S. 605, 612 (1989) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Accordingly, the Second Circuit has "cautioned against arguments that 'would essentially collapse the standing inquiry into the merits,' and attempts to 'conflate the threshold question of [the plaintiff's] standing under Article III . . . with the question of whether [he] has a valid claim on the merits.'"  *SM Kids, LLC v. Google LLC*, 963

13

F.3d 206, 212 (2d Cir. 2020) (alterations in original) (citation omitted) (first quoting *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003); and then quoting *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000)).  To guard against that conflation, "a court must 'assume' that the plaintiffs 'are correct' on their legal theory," and the failure to so assume "confuses weakness on the merits with absence of Article III standing."  *B.B. by Rosenthal v. Hochul*, 166 F.4th 259, 278 (2d Cir. 2026) (first quoting *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 41 (2d Cir. 2023); and then quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)).

The gravamen of Nesselson's Section 1983 claim, as based on the Fourteenth Amendment, is that Defendants' actions have interfered — and continue to interfere — with his right to practice his profession.  *See, e.g.*, Am. Compl. ¶¶ 22, 112-14, 159.  He additionally alleges that he has a property interest in being granted access to the CIR.  *Id.* ¶¶ 24, 106.  These pleadings sufficiently allege an injury for purposes of Article III standing.  *See Khan*, 2026 WL 1361834, at *2 ("[Plaintiff] claims to have a protected property interest in accessing NYSIIS.  Thus, his ongoing loss of access to NYSIIS constitutes an ongoing injury for purposes of establishing standing to seek prospective relief."); *Guggenheim*, 2026 WL 1075924, at *6 (finding that plaintiff had standing based on allegations that "the prohibition from using NYSIIS and the directive to schools to not accept vaccination records restricts [p]laintiff's ability to practice nursing" (internal quotation marks and citation omitted)).  The State Defendants' contention that Nesselson has insufficiently pleaded facts to establish *how* the Website posting injures him, *see* State Br. at 24-27, goes to the merits of his claim, which the Court does not reach during a standing inquiry.  *See Hochul*, 166 F.4th at 278.  Therefore, the Court finds that Nesselson has standing to assert his Section 1983 claim under the Fourteenth Amendment.

14

### B.    Sovereign Immunity

The State Defendants further argue that they are entitled to sovereign immunity under the Eleventh Amendment with respect to Nesselson's claims against them.  *See* State Br. at 28-32. Specifically, they contend that Nesselson "does *not* allege facts that plausibly suggest any ongoing course of conduct toward [him] with respect to [the Website posting]"; to the contrary, according to the State Defendants, the Website posting "was a discrete action that was completed when the information was posted."  *Id.* at 29.[5]  Thus, the State Defendants conclude, Nesselson's proposed injunctive and declaratory relief would be entirely retrospective and impermissible under the Eleventh Amendment.  *Id.* at 30-31.  The Court disagrees.

Generally, the Eleventh Amendment bars "a private person's suit against a State" in federal court.  *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011).  "However, 'there is a well-known exception to this rule — established by the Supreme Court in *Ex parte Young*[, 209 U.S. 123 (1908)] and its progeny — by which suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law.'"  *T.W. v. N.Y. State Bd. of L. Examiners*, 110 F.4th 71, 91 (2d Cir. 2024) (alteration adopted) (quoting *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020)).  The *Young* exception's applicability turns on the "straightforward" question of "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" but, as in

---

[5] The State Defendants also argue that the Eleventh Amendment bars Nesselson's claims against them with respect to CIR access, the Subpoena, and any of their alleged violations of New York state law.  State Br. at 30-31.  The Court need not address these arguments.  As Nesselson explained in his opposition brief, he does not bring claims against the State Defendants based on the CIR.  Opp. to State at 24.  Moreover, the Court has already dismissed Nesselson's Fourth Amendment claim based on the Subpoena for lack of standing.  Finally, while the Amended Complaint alleges numerous violations of state law, it does not clearly tie those violations to any purported cause of action, let alone the Section 1983 claim (which, as discussed, is the only valid cause of action).

a standing inquiry, "does not include an analysis of the merits of the claim." *Guggenheim*, 2026 WL 1075924, at *3 (first quoting *Unkechaug Indian Nation v. Seggos*, 126 F.4th 822, 829 (2d Cir. 2025); and then quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 621 (2d Cir. 2007)).

As the Court explained in its standing discussion, Nesselson alleges ongoing due process violations based on the State Defendants' Website posting. *See, e.g.*, Am. Compl. ¶¶ 135-36 (alleging that "continued and pro[sp]ective violations of [Nesselson's] Fourteenth and Fifth Amendment rights exist as long as the defendants continue in full force and effect the posting on their branding website . . ., which directs school districts to reject paper medical records from the Plaintiff evidencing the vaccination of his pediatric patients and which holds out the Plaintiff as a vaccine fraudster without the existence of any formal adjudication"); *id.* ¶ 159 (alleging that Website posting "is violative of Plaintiff's . . . constitutional right to practice the nursing [*sic*] profession without government interference safeguarded by the Fifth and Fourteenth Amendment of the US Constitution"). And he seeks injunctive and declaratory relief that applies to this alleged ongoing violation. *See id.* ¶¶ 142, 146(c), 149-50 (seeking to enjoin the State Defendants from maintaining the Website posting because the posting creates an ongoing constitutional violation); *id.* ¶ 159 (seeking declaratory judgment that same "continued" conduct represents a constitutional violation). These allegations sufficiently plead — for purposes of establishing *Ex parte Young*'s sovereign immunity exception — an ongoing constitutional violation to be redressed through injunctive and declaratory relief. *See Seneca Nation v. Hochul*, 58 F.4th 664, 671 (2d Cir. 2023) (finding that claim fell under *Ex parte Young* exception where "it *stemmed from a past wrong*, [but it] *continued to cause* constitutional violations"); *Guggenheim*, 2026 WL 1075924, at *3-4 (finding, under similar facts and pleadings, that plaintiff had sufficiently pleaded ongoing violation to clear Eleventh Amendment challenge); *cf. T.W.*, 110 F.4th at 94 (finding that claim did not fall under *Ex parte Young* exception where plaintiff alleged

16

defendants' administration of her examination violated federal disability law and sought injunction requiring defendants to remove all record of her examination results, but noting that claim "may well have" met exception "if [plaintiff] had alleged that the [defendant]'s maintenance of records [itself] violated" the law).

Therefore, the Court finds that the State Defendants are not entitled to Eleventh Amendment sovereign immunity on Nesselson's Fourteenth Amendment claim. Accordingly, the Court turns to the merits of that claim.

### C.    Merits

Where a plaintiff alleges a deprivation of his procedural due process rights, "a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). As discussed, Nesselson presents two Fourteenth Amendment theories: first, that the City and State Defendants' conduct restricts his right to use his medical license and pursue his chosen profession, *see* Am. Compl. ¶¶ 22, 112-14, 146(c), 159; second, that he has a due process right in acquiring access to the CIR, *id.* ¶¶ 24, 88. Neither theory holds water.

Nesselson's first theory fails because Defendants' alleged conduct does not sufficiently implicate the property interest he holds in his profession. To be sure, "[t]he right to follow a chosen profession is a property interest protected by the . . . Fourteenth Amendment[]." *Lange-Kessler v. Dep't of Educ.*, 109 F.3d 137, 140 (2d Cir. 1997). Thus, physicians have a "property interest in their medical licenses and a liberty interest in pursuing their chosen profession." *Tsirelman v. Daines*, 794 F.3d 310, 315 (2d Cir. 2015). But Nesselson cites no authority supporting the notion that any degree of governmental interference with those interests, no matter how minimal, creates a constitutional violation. To the contrary, "the Supreme Court, th[e] [Second] Circuit, and the other Circuits addressing the issue have all indicated that the right

17

of occupational choice is afforded Due Process protection only when a plaintiff is 'completely prohibited' from engaging in his or her chosen profession." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (alterations adopted) (quoting *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999)); *accord Tarrant v. City of New York*, No. 24-cv-02011 (MMG), 2026 WL 861637, at *4 (S.D.N.Y. Mar. 30, 2026). Nesselson does not plead facts establishing such a complete prohibition here.

The Amended Complaint does not contain any allegation that Defendants' conduct has entirely prevented Nesselson from the practice of medicine. Indeed, Nesselson repeatedly highlights that no state authority has suspended or revoked his medical license, which remains "unencumbered and unrestricted" despite Defendants' alleged conduct. Am. Compl. ¶ 2; *see also, e.g.*, *id.* ¶ 77(b), (f) (alleging that Nesselson's license was unrestricted at time of the Website posting); *id.* ¶ 107 ("The Plaintiff is a licensed physician and he has an unencumbered license to practice medicine[.]"); *id.* ¶ 113 (referring to Nesselson's "unencumbered license and practice of medicine"). And while Nesselson alleges throughout the Amended Complaint that Defendants' conduct restricts his ability to administer vaccinations and thus constitutes a de facto restriction on that license, *see, e.g.*, *id.* ¶¶ 112-13, he does not allege that vaccinations comprise the entirety of his medical practice, as a Fourteenth Amendment due process claim requires. *See Hu*, 927 F.3d at 102-03 (rejecting Fourteenth Amendment claim where "[n]othing in the [a]mended [c]omplaint plausibly suggests that the plaintiffs have been driven out of the construction business, or even that they are on the verge of shutting down. If anything, the [a]mended [c]omplaint appears to anticipate the plaintiffs' continued operations in the construction industry."). And in opposition to the State Defendants' motion to dismiss, Nesselson appears to take the position, contrary to his pleadings, that his access to the CIR has no bearing at all on his ability to administer vaccinations. *See* Opp. to State at 25-26 (arguing

18

that "the vaccine mandate statute . . . does not specify in any provision that in the absence of CIR access a physician cannot vaccinate his patients," and declaring that the State Defendants' contention that "if the Plaintiff does not have access to the CIR he cannot administer vaccines, period full stop" is "simply incorrect," a "false statement," and a "legal fiction"). Indeed, Nesselson's position here echoes that of the plaintiff nurse in *Guggenheim*, who claimed that "her loss of access to NYSIIS and DOH's posting on the Website . . . amount[ed] to a 'de facto license restriction,'" but whose own allegations demonstrated that "she still practice[d] her profession, albeit with limitations on access to NYSIIS and use of paper verifications of vaccinations for persons under 19 years of age." *Guggenheim*, 2026 WL 1075924, at *10 (citation omitted). Therefore, the *Guggenheim* court dismissed that plaintiff's Fourteenth Amendment claim, noting that "courts in this Circuit have found that no property interest has been implicated" under similar circumstances, "because the individual claiming the due process violation may still practice their profession." *Id.* Nesselson's attempt to distinguish *Guggenheim* by arguing that his practice "by a large part involves vaccinations of patients under 19 years of age," Dkt. 84 at 2, is unavailing, inasmuch as that representation is not reflected in his pleadings and, in any event, does not establish that the vaccination of such patients constitutes the entirety of his practice.[6]

---

[6] Nesselson submitted a 47-page, 209-paragraph declaration in opposition to Defendants' motions to dismiss, and, in that document, he asserts that he "rapidly lost approximately 30% of [his] pediatric patient base at the tune of a total loss of approximately $400,000.00 since November 2024." Dkt. 67 ¶ 123. He cites the same assertion in his briefing. *See* Opp. to City at 14-15. But the Court disregards that assertion, and indeed disregards the entirety of Nesselson's declaration, which is not properly considered on a motion to dismiss. *See Wachtel v. Nat'l R.R. Passenger Corp.*, No. 11-cv-00613 (PAC), 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) ("While [p]laintiff attached an affidavit to his opposition brief in an attempt to support his argument, the [c]ourt cannot consider affidavits in ruling on a motion to dismiss."); *Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 n.3 (S.D.N.Y. 2006) ("A complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment."); *Riddle v. Citigroup*, No. 13-cv-06833 (AKH), 2014 WL 2767180, at *3 n.3

Nesselson suggests that a plaintiff need not allege an entire prohibition of his professional pursuits when a medical license (rather than, presumably, a non-licensed occupation) is at issue. *See* Opp. to City at 17-18. He cites just one case in support of that claim: *Harris v. Mills*, 478 F. Supp. 2d 544, 549 (S.D.N.Y. 2007). But *Harris* says nothing more than the fundamental rule the Court has applied above: A plaintiff has a property interest in practicing his profession of choice. *See Harris*, 478 F. Supp. 2d at 549 ("[Plaintiff]'s claim that a medical license represents a property right is not without merit."). It does not expand or otherwise alter that rule in the context of medical licenses. And as the court in *Guggenheim* pointed out, the cases cited in *Harris* — which Nesselson also cites, *see* Opp. to City at 17-18 — all involved plaintiffs whose "license had either been suspended or revoked or had been threatened with suspension or revocation." *Guggenheim*, 2026 WL 1075924, at *10 (citing *Barry v. Barchi*, 443 U.S. 55, 59-64 (1979); *Donk v. Miller*, 365 F.3d 159, 163 (2d Cir. 2004); and *Keney v. Derbyshire*, 718 F.2d 352, 353 (10th Cir. 1983)); *see also Harris*, 478 F. Supp. 2d at 549 (citing the same three cases). *Harris* is likewise inapposite, as it concerned the plaintiff's allegation that the state wrongfully revoked his medical licenses "following administrative proceedings" in which the state allegedly "failed to make reasonable accommodations for certain learning disabilities from which he suffer[ed]." *Harris*, 478 F. Supp. 2d at 546. Those facts are not analogous to those Nesselson has pleaded here, and neither *Harris* nor the cases it cites are any aid to Nesselson.

Nesselson's second Fourteenth Amendment theory — that he has a property interest in access to the CIR — is foreclosed by *Khan*. There, the Second Circuit held that there was no basis in state law for the plaintiff physician's purported "protected 'entitlement' to continued

---

(S.D.N.Y. May 29, 2014) ("[D]ocuments attached to an opposition to a motion are not equivalent to allegations in a complaint."). Even if the Court were to consider the assertion, though, it would support the Court's conclusion that Nesselson has failed to allege a wholesale restriction on his ability to pursue his profession.

NYSIIS access sufficient to establish a property interest and support a procedural due process claim." *Khan*, 2026 WL 1361834, at *2. As the court explained in that case:

> The relevant statute assigns *obligations* in the administering and reporting of vaccinations; it does not guarantee access to the database. Moreover, the statute grants the Commissioner of DOH the ability to refuse or suspend NYSIIS access based on undefined, discretionary factors like "authenticity" and "credibility." Indeed, the Commissioner may refuse access for "other reasons" he identifies in his own regulations. Such broad discretion is incompatible with the creation of a property interest.

*Id.* (citations omitted); *see also Guggenheim*, 2026 WL 1075924, at *8 (reviewing same statute and reasoning that its language "is the type of standardless vesting of discretionary authority to confer or deny a benefit that courts typically deem to not create a property interest"). And crucially, the statute that empowers the state to refuse or suspend access to the NYSIIS provides identical discretion to the city in managing the CIR. *See* N.Y. Pub. Health L. § 2168(9) (providing that both the DOH Commissioner and the DOHMH Commissioner "may refuse access to the [respective databases] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation"). The Court sees no basis to depart from the Second Circuit's reasoned analysis of the relevant statute or its rejection of the same argument Nesselson advances here. Nor has Nesselson provided any basis to distinguish *Khan* from this case. *See* Dkts. 85-86.

Therefore, Nesselson fails to allege that Defendants' conduct is violating or has violated the Fourteenth Amendment.

*          *          *

Because each of Nesselson's theories of Defendants' constitutional violations fails, Nesselson's Section 1983 claim is a tree without roots, lacking any grounding legal basis. *Sykes*, 13 F.3d at 519 (explaining that Section 1983 "itself creates no substantive rights; it provides only

21

a procedure for redress for the deprivation of rights established elsewhere").  Therefore, the claim is dismissed.

### V.      Nesselson's Motion for Preliminary Injunction

In light of the foregoing, Nesselson's motion for preliminary injunction is moot, and it is denied on that basis alone.  *See AmeriCredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 755 (2d Cir. 2010) ("[I]f we conclude that a case is moot, we lack jurisdiction to hear it.").

### VI.     Sealing Motions

Remaining before the Court are three sealing motions.  *See* Dkts. 74-75, 77.  Each motion seeks to file under seal just one document — OPMC's July 2024 letter to Nesselson — which is filed on the docket at multiple locations.  *See* Dkts. 1-6, 45-6, 46-6, and 49-6.  And each motion seeks only to redact from that letter the names and dates of birth of minor children that appear therein.  *See generally* Dkts. 74-75, 77.  These requests are consistent with the Federal Rules of Civil Procedure and with established practice in this Circuit.  *See Diejuste v. Sin*, 125 F.4th 397, 400 n.2 (2d Cir. 2025) ("Social-security numbers, birthdates, and the names of minors may not be contained in public filings unless the court so orders." (citing Fed. R. Civ. P. 5.2(a))).  They are therefore GRANTED.  Nesselson shall file a redacted copy of the OPMC letter as proposed at Dkt. 75-1, and the versions currently filed at Dkts. 1-6, 45-6, 46-6, and 49-6 shall remain under seal.

### CONCLUSION

For all the reasons stated above, the State Defendants' motion to dismiss is GRANTED, the City Defendants' motion to dismiss is GRANTED, Nesselson's motion for preliminary injunction is DENIED, Nesselson's motion to quash is DENIED, and the parties' sealing motions are GRANTED.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 52, 54, 59, 62, 74, 75, and 77, and thereafter to CLOSE the case.

Dated: July 31, 2026
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

23